FILED
United States Court of Appeals
Tenth Circuit

January 16, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

    v.

EDWARD ZUNIGA,

      Defendant - Appellant.

No. 07-3333

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D. Ct. No. 2:07-CR-20056-KHV-1)**

---

Melissa Harrison, Assistant Federal Public Defender (David J. Phillips, Federal Public
Defender, with her on the briefs), Office of the Federal Public Defender, Kansas City,
Kansas, appearing for Appellant.

James A. Brown, Assistant United States Attorney (Eric F. Melgren, United States
Attorney and Leon Patton, Assistant United States Attorney, Office of the United States
Attorney for the District of Kansas, Kansas City, Kansas, on the brief), Office of the
United States Attorney for the District of Kansas, Topeka, Kansas, appearing for
Appellee.

---

Before **TACHA**, **KELLY**, and **HOLMES**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Defendant-Appellant Edward Zuniga pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court enhanced Mr. Zuniga's sentence under the Armed Career Criminal Act ("ACCA") and sentenced him to 180 months' imprisonment. *See* 18 U.S.C. § 924(e)(1). On appeal, Mr. Zuniga asserts that he was denied due process and that his prior conviction for possession of a deadly weapon in a penal institution does not qualify as a predicate "violent felony" pursuant to the ACCA. *See id.* § 924(e)(2)(B). We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## II. BACKGROUND

In July 2007, Mr. Zuniga pleaded guilty to possessing a firearm after a former felony conviction in violation of 18 U.S.C. § 922(g)(1). During the plea colloquy, he acknowledged that between 1989 and 2003 he had been convicted of three crimes punishable by a term of imprisonment exceeding one year. Although two of those crimes undisputably qualified as violent felonies, Mr. Zuniga and the government concurred that one of the convictions—possession of a deadly weapon in a penal institution, a violation of Tex. Penal Code Ann. § 46.10—did not qualify as a predicate violent felony under the ACCA. *See* 18 U.S.C. § 924(e)(1). The presentence report ("PSR"), however, recommended that Mr. Zuniga's Texas conviction was a predicate violent felony, bringing his total number of violent felony convictions to three and requiring the

application of the ACCA minimum sentence of fifteen years.[1]  *See id.*  Mr. Zuniga did not

object to the PSR.

At sentencing, Mr. Zuniga and the government notified the court that in light of the

PSR, they had mutually agreed to amend the plea agreement.  Under the new agreement,

Mr. Zuniga consented to be sentenced as an armed career criminal on the condition that

his right to appeal, which he had waived, would be restored.  Mr. Zuniga also formally

objected to his status as an armed career criminal under the ACCA.  The district court

approved the parties' modified agreement and sentenced Mr. Zuniga to 180 months'

imprisonment, followed by three years of supervised release.

## II. DISCUSSION

A.      ACCA Sentence Enhancement

Mr. Zuniga asserts that his Texas conviction for possession of a deadly weapon in

a penal institution is not a violent felony pursuant to the ACCA.  Whether a prior

conviction qualifies as a violent felony is a question of law that we review de novo.

*United States v. Fell*, 511 F.3d 1035, 1037 (10th Cir. 2007).

The ACCA mandates a fifteen-year statutory minimum sentence for any defendant

who is (1) convicted of being a felon in possession of a firearm and (2) has "three

previous convictions by any court . . . for a violent felony or a serious drug offense, or

---

[1]The PSR calculated Mr. Zuniga's offense level to be 30 and his criminal history category to be IV, resulting in an advisory guideline imprisonment range of 135–168 months' imprisonment.  Application of 18 U.S.C. § 924(e), however, mandates a fifteen-year (180-month) minimum sentence.

both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). In pertinent part, the ACCA defines "violent felony" as: "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).

This court has determined that a conviction for conveying a weapon in a federal prison is a violent felony for purposes of the ACCA enhancement. *United States v. Romero*, 122 F.3d 1334, 1341 (10th Cir. 1997). In that case, however, we analyzed the issue only in terms of whether possessing a weapon in prison "posed a serious potential risk of physical injury to another." *Id.* (quotations omitted). The Supreme Court's recent decision in *Begay v. United States*, — U.S. —, 128 S. Ct. 1581 (2008), expands this analysis. After *Begay*, our determination of "whether a prior conviction qualifies as a violent felony under the ACCA's residual provision . . . requires a two-part inquiry." *United States v. West*, — F.3d —, 2008 WL 5158599, at *5 (10th Cir. 2008). We consider "(1) whether the offense of conviction 'presents a serious potential risk of physical injury to another,'18 U.S.C. § 924(e)(2)(B)(ii); and (2) whether the offense is 'roughly similar, in kind as well as in degree of risk posed, to the' offenses specifically enumerated in § 924(e)(2)(B)(ii)—burglary, arson, extortion, or crimes involving explosives." *Id.* (quoting *Begay*, 128 S. Ct. at 1585). We do not inquire into Mr. Zuniga's specific conduct, but "consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an

individual offender might have committed it on a particular occasion." *Begay*, 128 S. Ct. at 1584. *See also Taylor v. United States*, 495 U.S. 575, 602 (1990) (adopting this "categorical approach"). At the time of Mr. Zuniga's conviction, Texas defined possession of a deadly weapon in a penal institution, in pertinent part, as follows:

(a) A person commits an offense if, while confined in a penal institution, he intentionally, knowingly, or recklessly:

(1) carries on or about his person a deadly weapon; or

(2) possesses or conceals a deadly weapon in the penal institution.

. . . .

(d) An offense under this section is a felony of the third degree.

Tex. Penal Code Ann. § 46.10. We must consider, then, whether this offense presents a serious potential risk of physical injury to another and is roughly similar, in kind as well as in degree of risk posed, to the offenses specifically enumerated in § 924(e)(2)(B)(ii).

1. *Serious Potential Risk of Physical Injury*

Our *Romero* decision is strongly persuasive on the issue of whether possession of a deadly weapon in prison "presents a serious potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B)(ii). We concluded in *Romero* that it did, 122 F.3d at 1341, and we now reaffirm that conclusion.

For two reasons, a conviction under Tex. Penal Code Ann. § 46.10 clearly involves conduct that presents a serious potential risk of physical injury to another. First, it requires carrying, possessing, or concealing something "manifestly designed,

made, or adapted for the purpose of inflicting death or serious bodily injury; or . . .

anything that in the manner of its use or intended use is capable of causing death or

serious bodily injury." *See* Tex. Penal Code Ann. § 1.07 (defining "deadly weapon").

Second, it requires that the act be committed within the confines of a penal institution.

We have determined that such confines "preclude any recreational uses for a deadly

weapon and render its possession a serious threat to the safety of others. By its nature

. . . the possession of a deadly weapon by a prison inmate presents a serious potential

risk of physical injury to another." *Romero*, 122 F.3d at 1341 (quotations omitted).[2]

Accordingly, we are satisfied that Mr. Zuniga's predicate offense presented a serious

potential risk of physical injury to another.

    2.    *Similarity In Kind and Degree of Risk*

    We next consider whether Mr. Zuniga's offense was "roughly similar, in kind as

well as in degree of risk posed," to burglary, arson, extortion, or crimes involving

explosives. *Begay*, 128 S. Ct. at 1585.

    In *West*, we read *Begay* as holding "that the crime at issue is sufficiently similar to

the offenses enumerated in § 924(e)(2)(B)(ii) if it 'typically involves purposeful, violent,

---

[2]The prison setting distinguishes the present case from *United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008), which Mr. Zuniga asks us to follow. The offense at issue in *Archer* was carrying a concealed firearm. *Id.* at 1350; *see also* Fla. Stat. § 790.01(2). The Eleventh Circuit held that the defendant's prior conviction for carrying a concealed firearm did not involve a crime of violence. *Id.* at 1352. This court, however, has distinguished the act of carrying a concealed firearm from possessing a deadly weapon in a penal institution. *See Romero*, 122 F.3d at 1343 ("[T]here is no legitimate purpose for a prisoner to carry a weapon designed to kill, injure or disable another.").

and aggressive conduct.'"  *West*, 2008 WL 5158599, at *10 (quoting *Begay*, 128 S. Ct. at 1586).  We therefore must determine whether possession of a deadly weapon in prison is a crime that typically involves purposeful, violent, and aggressive conduct.  We conclude that it does.

We stated in *West* that "*Begay* equates purposeful with deliberate or intentional." *Id.* at *14.  Under the statute in question, Mr. Zuniga could have been convicted for possessing the deadly weapon "intentionally, knowingly, or recklessly."  Tex. Penal Code Ann. § 46.10(a).  Because the statute's definition includes reckless conduct, it does not necessitate that the possession be deliberate or intentional.  However, the *Begay* test specifically requires that the crime in question "typically" involve purposeful conduct. *West*, 2008 WL 5158599, at *10.  It is reasonable to surmise that those who possess deadly weapons in a penal institution typically intend to possess them.  Additionally, Texas interprets Mr. Zuniga's offense in terms that are unmistakably deliberate and intentional.  A Texas court has held that  "[t]o support a conviction for possession of a deadly weapon in a penal institution, the State must show that the accused (1) exercised actual care, control, or custody of the weapon, (2) was conscious of his or her connection with it, and (3) possessed the weapon *knowingly or intentionally*."  *Wilson v. State*, No. 13-04-00298-CR, 2007 WL 1559104, at *6 (Tex. App.–Corpus Christi May 31, 2007) (unpublished) (emphasis added).  Mr. Zuniga's offense is therefore appropriately characterized as "typically" involving purposeful conduct.

Possessing a deadly weapon is, moreover, more analogous to the offenses listed in

- 7 -

18 U.S.C. § 924(e)(2)(B)(ii)—burglary, arson, extortion, and the use of explosives—than it is to driving under the influence of alcohol, the crime at issue in *Begay*. 128 S. Ct. at 1583. The Court in *Begay* determined that driving under the influence was not a purposeful crime because it was similar to a strict liability offense, "criminalizing conduct in respect to which the offender need not have any criminal intent at all." *Id.* at 1586–87. Possession of a deadly weapon in prison is not a strict liability crime, because it requires either intentional or reckless behavior. Tex. Penal Code Ann. § 46.10. In terms of purpose, it is therefore not analogous to driving under the influence.

We next consider whether the predicate offense is violent and aggressive. Mr. Zuniga asserts that any offenses included in the residual clause of § 924(e)(2)(B)(ii) must be exclusively characterized as involving acts of violence against a person. We disagree. Even the listed offenses in that clause cannot be so characterized. More importantly, we held in *West* that an offense is violent if it creates a likelihood of violence. We noted that the Supreme Court "identified the violent aspect of a burglary as the possible confrontation between the burglar and the occupant or someone else investigating. . . . [A] burglar's entry need not be violent, for it creates the possibility of violence should the burglar confront an occupant, officer, or bystander." *West*, 2008 WL 5158599, at *13 (quotations omitted) (citing *Taylor v. United States*, 495 U.S. 575, 588 (1990)). We added that the offender's awareness about the likelihood of violence indicated a willingness to use violence if necessary. *Id.*

Similarly, possession of a deadly weapon in a penal institution creates the

possibility—even the likelihood—of a future violent confrontation. *See id.* As we held in

*Romero*,

> [T]here is no legitimate purpose for a prisoner to carry a weapon designed
> to kill, injure or disable another . . . [T]he only reason to carry such a
> weapon is to use it to attack another or to deter an attack. Either way, the
> possession involves a substantial risk that physical force will be used while
> the weapon is in the possession of the prisoner.

*Romero*, 122 F.3d at 1343. Mr. Zuniga's possession of a deadly weapon in prison likely

indicated that he was "prepared to use violence if necessary." *See West*, 2008 WL

5158599, at *13. Thus, applying the same analysis as this court applied in *West*, we

conclude that possession of a deadly weapon in prison involves "violent" conduct.

We consider it unlikely that any conduct properly characterized as "violent" could

not also be characterized as "aggressive."[3] In *West*, we held that flaunting the order of a

police officer was aggressive conduct. *Id.* Our analysis noted that the conduct in

question was likely to produce a dangerous response. *Id.* The same analysis applies to

---

[3]In *West*, this court described aggressive behavior as being "offensive and forceful and characterized by initiating hostilities or attacks." *West*, 2008 WL 5158599, at *12. While that definition certainly describes aggressive conduct, we believe that it does not describe all conduct that could be labeled as "aggressive."

*West* cites to a district court case—*United States v. Charles*, 566 F. Supp. 2d 1229, 1238 (D. Kan. 2008)—which in turn cites, but does not directly quote, the fourth edition of the American Heritage Dictionary. *Charles*, 566 F. Supp. 2d at 1238. That definition begins with the following two entries: "Characterized by aggression: *aggressive behavior*. 2. Inclined to behave in an actively hostile fashion; *an aggressive regime*." Am. Heritage Dictionary of the English Language (4th ed. 2006) (emphasis in original).

We acknowledge that applying only the *West* definition of aggressive conduct would leave doubt as to whether a possession offense could be included. However, one who possesses a deadly weapon in prison can properly be characterized as one who is "[i]nclined to behave in an actively hostile fashion." *See id.* Thus, we conclude that the predicate offense falls within the definition of aggressive conduct.

the possession of a deadly weapon in prison. When a prisoner carries a deadly weapon, that behavior indicates a readiness to enter into conflict, which in turn creates a danger for those surrounding the armed prisoner. For that reason, possessing a deadly weapon in prison is aggressive conduct.

We therefore conclude that possessing a deadly weapon in prison involves purposeful, violent, and aggressive conduct. Based on the test outlined in *West*, the offense is similar in kind and degree of risk to the statutory offenses. Because we have previously determined that the offense poses a serious potential risk of physical injury to another, the offense therefore can properly be characterized as a "violent felony."

Finally, it is worth noting that this conclusion accords with the "basic purposes" of the ACCA, as thus described in *Begay*:

> [i]n order to determine which offenders fall into this category [of armed career criminals], the Act looks to past crimes. This is because an offender's criminal history is relevant to the question whether he is a career criminal, or, more precisely, to the kind or degree of danger the offender would pose were he to possess a gun.

*Begay*, 128 S. Ct. at 1587. Mr. Zuniga's convictions include felony manslaughter, felony assault with a dangerous weapon, and possession of a deadly weapon in prison. His criminal history indicates that he would likely pose significant danger were he to possess a gun. Accordingly, his classification as an armed career criminal is congruent with the "basic purposes" of the ACCA. *See id.*

For all of the foregoing reasons, we hold that Mr. Zuniga's crime of possessing a deadly weapon in prison is a "violent felony."

- 10 -

B.    Due Process

Mr. Zuniga also argues he received inadequate notice that his sentence was subject to the ACCA enhancement.  He contends that his right to due process was violated because he was notified of the enhancement when the PSR was submitted—after his guilty plea and after the government's affirmation that enhancing his sentence pursuant to the ACCA was inappropriate.  We disagree. After accepting a guilty plea, but before sentencing, a district court is authorized to correct an error of law in a plea petition.  *See United States v. Johnson*, 973 F.2d 857, 861 (10th Cir. 1992).

In *Johnson*, a plea agreement erroneously referenced a ten-year maximum sentence.  *Id.*  Like Mr. Zuniga, Mr. Johnson was found to be an armed career criminal and received the minimum fifteen-year sentence under 18 U.S.C. § 924(e)(1).  *Id.* at 858–59.  Mr. Johnson then declined an opportunity to withdraw his guilty plea.  *Id.* at 859.  The court determined that the defendant had not suffered any prejudice associated with the error and that his right to due process was not violated.  *Id.* at 861.  The facts of this case are analogous.  The only notable difference is that the record does not indicate that Mr. Zuniga was formally offered the opportunity to withdraw his plea.  However, the record reflects that the government acknowledged Mr. Zuniga's right to withdraw the plea, and that the parties instead came to a revised plea agreement.  Because Mr. Zuniga voluntarily entered into the revised agreement, we see no meaningful distinction between this case and *Johnson*, and therefore Mr. Zuniga's due process rights were not violated.

## III. CONCLUSION

Mr. Zuniga's conviction for possession of a deadly weapon in a penal institution qualifies as a predicate violent felony, triggering the ACCA's minimum fifteen-year sentence. *See* 18 U.S.C. § 924(e)(2)(B). Mr. Zuniga also received due process prior to his sentencing. Accordingly, we AFFIRM Mr. Zuniga's sentence.