# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2010

No. 09-31138

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ROY L. SCHMIDT, III

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, WIENER, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Roy Schmidt III appeals his designation as an Armed Career Criminal ("ACC") under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("the ACCA"). Schmidt pleaded guilty to conspiracy to possess a pipe bomb and to being a convicted felon in possession of a pipe bomb. He now challenges the district court's sentencing determination that a prior conviction for theft of a firearm from a licensed gun dealer, in violation of 18 U.S.C. § 922(u), is a violent felony for purposes of the ACCA. We affirm.

No. 09-31138

## I.  Facts & Proceedings

On and before December 31, 2007, Schmidt agreed with "Individual A" for him to buy parts and build, and for Schmidt to receive and possess, one unregistered "pipe bomb."  Schmidt provided the funds for Individual A to purchase the bomb components from a Lowes Building Supply store and a Home Depot Building Supply store in Jefferson, Louisiana.  Both Schmidt and Individual A provided the explosive powders for at least three pipe bombs.  On December 31, 2007, Schmidt, Individual A, and Individual B constructed three pipe bombs at Individual A's house.  Afterwards, Schmidt took possession of one the bombs.

Schmidt was indicted in October 2008 for conspiring to possess an unregistered pipe bomb,[1] conspiring to commit an offense against or to defraud the United States,[2] and illegal possession of such a bomb.[3]  In June 2009, Schmidt pleaded guilty as charged, without entering into a plea agreement. The next month, after being advised of his rights, Schmidt signed a notarized statement admitting to having pipe bombed of a vehicle on January 1, 2008.

Schmidt's sentencing hearing was held in November 2009.  The government produced documents supporting Schmidt's state court convictions for (1) a December 4, 1993 attempted robbery while armed with a dangerous weapon in violation of La. Rev. Stat. §§ 14:27 and 64; (2) a July 21, 1993, simple burglary of an automobile in violation of LA. Rev. Stat. § 14:62; (3) an August 8 1996, possession of stolen things valued at over $500.00 in violation of La. Rev. Stat. § 14:69; (4) an August 7, 1996, simple arson of property with a value over

---

[1] 26 U.S.C. § 5861(d) (2010).

[2] 18 U.S.C. § 371 (2010).

[3] *Id.* § 922(g)(1) (2010).

2

No. 09-31138

$500 in violation of La. Rev. Stat. § 14:52; and (5) an August 7, 1996, simple burglary of an inhabited dwelling in violation of La. Rev. Stat. § 14:62:2.

The presentence report ("PSR") concluded that Schmidt's prior convictions for attempted armed robbery, arson, and simple burglary of an inhabited dwelling were crimes of violence and assigned Schmidt a base offense level of 24 pursuant to U.S.S.G. § 2K2.1. Schmidt was assigned additional enhancements based on use of a pipe bomb, use of a firearm in connection with another felony offense, leadership role in the offense, and involving a minor in the offense. Schmidt received a downward adjustment for his acceptance of responsibility. The PSR determined that Schmidt qualified as an ACC on the basis of the convictions listed above as well as another conviction for stealing firearms from a federally licensed dealer. The PSR set Schmidt's Guidelines sentencing range at 188-235 months in prison on the firearms charge and 60 months in prison on the conspiracy charge.

Schmidt objected to the PSR, contending that he was not an ACC because (1) theft from a firearms dealer is not a crime of violence, and (2) he had not involved a minor in the offense. The district court accepted Scmidt's objection to the latter, but rejected his assertion that theft of a firearm from a firearms dealer is not a crime of violence. These rulings reduced Schmidt's guidelines sentencing range to 151-188 months in prison.

In November 2009, the district court sentenced Schmidt to five years imprisonment on count one (conspiracy to possess an unregistered destructive device), pursuant to 26 U.S.C. § 5861(d), and to a concurrent term of fifteen years as an ACC on count two (convicted felon in possession of a firearm), pursuant to 18 U.S.C. § 924(e). Schmidt timely filed a notice of appeal.

## II. Analysis

### A. Standard of Review

3

No. 09-31138

A sentencing court's determination whether theft of firearms from a licensed dealer qualifies as a violent felony is a statutory interpretation that we review *de novo*.[4] We also review a sentencing court's interpretation of the Guidelines *de novo*.[5] The Supreme Court held, in a similar case, that when a court determines whether a conviction qualifies as a violent felony under the ACCA, it engages in statutory interpretation and not in judicial fact finding.[6] Therefore, there is no Sixth Amendment issue under *Apprendi v. New Jersey*.[7]

## B.  The ACCA

Schmidt raises only one issue in his appeal: whether his 18 U.S.C. § 922(u) conviction for theft of firearms from a licensed dealer qualifies as a violent felony for ACCA purposes. One of the ways a defendant is determined to be an ACC when his current conviction constitutes a violation of the pipe-bomb statute, § 922(g), and he has at least three prior convictions for violent felonies.[8] For ACCA purposes, a violent felony is one that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."[9] Thus, an offense will qualify as violent if: (1) "physical force against the person of another" is an element of the offense; (2)  the crime is burglary, arson or extortion, being the offenses enumerated in the ACCA; or (3) the crime

---

[4] *James v. United States,* 550 U.S. 192, 214 (2007).

[5] *United States v. Calderon-Pena*, 383 F.3d 254 (5th Cir. 2004).

[6] *Id.*

[7] 530 U.S. 466 (2000).

[8] 18 U.S.C. § 924(e)(1) (2010).

[9]  *Id.* § 924(e)(2)(B)(ii) (2010).

4

comes under the ACCA's residual clause, by constituting a "potential risk of physical injury to another."[10]

## C. Physical Force as an Element of the Offense

Schmidt insists that theft of firearms from a federally licensed dealer does not include, as a required element, the use, attempted use or threatened use of physical force against a person. The statute specifies that;

> It shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engaged in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce.[11]

Schmidt contends that when determining whether an offense qualifies as a violent felony, the court is only allowed to look at the terms of the statute and may not consider the underlying facts of the case.

Schmidt is correct that a court may only consider the elements of the conviction statute and not the specific conduct of the offender. The Supreme Court has mandated a categorical approach for deciding whether a prior conviction is a violent felony for the purposes of the ACCA.[12] This is because "the language of § 924(e) [the ACCA] generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions."[13] This approach is necessary because, otherwise, a particular crime might be considered a violent offense and

---

[10] *Id.* § 924(e)(2)(B) (2010).

[11] *Id.* § 922(u) (2010).

[12] *Taylor v. United States,* 495 U.S. 575, 600 (1990).

[13] *Id.*

5

No. 09-31138

count towards enhancement on some occasions and not on others, depending on the discrete facts. In addition, anything but the categorical approach would require sentencing courts to engage in elaborate fact finding about the defendant's prior offenses. This is why the sentencing court must "consider not how the defendant committed the crime, but how the crime is generally committed."[14]

Schmidt was not convicted under the "person" prong of § 922(u) but rather under its "premises" prong, because (1) the indictment charges that he "did steal and unlawfully take and carry away from the premises and inventory of A-1 Gun Repair, a licensed dealer" and (2) his factual basis states that the defendants broke the front window of the shop, entered it, and stole 11 handguns. Stealing from such a premises does not necessarily involve the use, attempted use, or threatened use of physical force against a person because it can be completed without anyone else being present. Therefore, this offense is not a violent offense under the first prong of the ACCA.

## D. The Enumerated Offenses under the ACCA

The government asserts that the language of § 922(u) matches the generic crime of burglary and therefore qualifies as a violent offense under the ACCA. This court defines the key elements of generic burglary as the "unlawful or unprivileged entry into, or remaining in" the premises "with intent to commit a crime."[15]

---

[14] *United States v. Hughes,* 602 F.3d 669, 674 (5th Cir. 2010).

[15] *United States v. Ortega-Gonzaga*, 490 F.3d 393, 395 (5th Cir. 2007). The Supreme Court defined burglary for the purposes of the ACCA similarly:

> [A] person has been convicted of burglary for the purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

*Taylor,* 495 U.S. at 599.

6

To determine whether an offense falls under the ACCA's enumerated felony of burglary, we employ a "common sense approach."[16] This involves the application of a three part test to determine whether a particular provision falls within the enumerated offenses. First, we determine the crime's generic, contemporary, ordinary meaning. Second, we distill the definitions to identify the crime's basic elements. Third, we compare the generic definition to the statute governing the prior conviction.[17] If the statute follows the generic definition, has only minor variations, or is narrower than the generic definition, the sentence may be enhanced.[18]

Schmidt raises the strong point that a § 922(u) firearm theft does not require that the entry into or presence inside the premises be unlawful or unprivileged. Although Schmidt did actually break into the premises, for the purposes of identifying whether a violation of § 922(u) is a burglary enumerated in the ACCA, only the elements of the offense, and not the specific conduct of the defendant, should be considered. And Schmidt is correct that, under the terms of § 922(u), unlawful entry or presence is not required. In contrast, the generic definition of burglary always requires an element of unlawful or unprivileged entry or presence. Although theft of firearms from a licensed dealer does have much in common with burglary, such theft ultimately lacks the element of unlawful or unprivileged entry that would make it identical to burglary. Therefore, § 922(u) does not qualify as a violent felony under the enumerated-crimes prong of the ACCA.

## E. The Residual Clause of the ACCA

---

[16] *United States v. Santiesteban-Hernandez,* 469 F.3d 376, 378-79 (5th Cir. 2006).

[17] *Id.* at 379.

[18] *Id.*

No. 09-31138

The residual clause of the ACCA defines a violent felony as one that "involves conduct that presents a serious potential risk of physical injury to another."[19]  The apparent purpose of the residual clause is to include those offenses that indicate the offender is a violent person who is likely to harm others.  For example, in *Begay v. United States,* the Supreme Court held that recidivist drunk driving does not qualify as a violent crime under the ACCA's residual-clause because the offense does not involve "purposeful, violent, and aggressive" conduct that presents a serious potential risk of physical injury to another.[20]  In contrast, noted the Supreme Court, a person who commits a violent felony is the kind of person who shows "an increased likelihood that [he] might deliberately point [a] gun and pull the trigger," the sort of behavior we associate with armed career criminals.[21]

Again, the proper inquiry is the categorical approach, as set forth in *Taylor.*[22]  In a later case, the Supreme Court summarized this approach: "The proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another."[23]  When the statute under consideration presents disjunctive alternatives, the court may consider certain other documents to determine which alternative was applied.[24]  In addition, the Guidelines approve of a court's determination that an offense is a crime of violence when "the conduct was set forth (i.e. expressly charged) in the count of which the defendant was convicted

---

[19] 18 U.S.C. § 924(e)(2)(B)(ii) (2002).

[20] *Begay v. United States*, 553 U.S. 137, 144-45 (2008).

[21] *Id.* at 147.

[22] 495 U.S. 575.

[23] *James v. United States*, 550 U.S. 192, at 208 (2007).

[24] *Hughes*, 602 F.3d at 674.

8

involved use of explosives. . .or, by its nature, presented a serious potential risk of physical injury to another."[25]  Review of the record is "generally limited to the charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented."[26]

> In the instant case, the factual basis of the plea to the indictment stated:

> On January 9, 1996, the A-1 Gun Repair Shop on West Esplanade Avenue in Metairie, Louisiana was burglarized.  The front window was broken, and eleven (11) handguns were stolen.  The owner of the shop would testify to the burglary and the eleven guns stolen.

This information allowed the sentencing court to identify Schmidt's offense as stealing guns from the premises of a licensed firearms dealer.  Schmidt contends that the judge erred by: (1) finding that stealing from the premises of a federally licenced firearms dealer creates a serious potential risk of physical harm to another; and (2) relying on Schmidt's specific conduct to decide whether the ACCA's residual clause was satisfied.

Schmidt notes that shoplifting is one of the crimes included in stealing from the premises of a licensed dealer, and that shoplifting posses no serious risk of physical injury to another person.  Schmidt cites a number of cases to support this proposition.[27]  He relies on *United States v. Mohr*[28] to argue that, when deciding whether the conviction is for a crime of violence, courts must consider the least culpable conduct that violates the applicable elements of a

---

[25] U.S.S.G. § 4B1.2, cmt. 1 (2009).

[26] *United States v. Gonzalez-Chavez,* 432 F.3d 334, 337-38 (5th Cir. 2005).

[27] *See United States v. Jackson,* 113 F.3d 249, 252 (D.C. Cir. 1997) (government does not contend shoplifting is a violent felony); *United States v. Parson,* 955 F.2d 858, 865 n.8 (3d Cir. 1992).

[28] 554 F.3d 604, 607 (5th Cir.), *cert. denied,* 130 S. Ct. 56 (2009).

statute. Therefore, asserts Schmidt, we must analyze theft of a firearm under § 922(u) as a shoplifting statute, as it is the least culpable conduct that violates the elements of the statute. *Mohr* is inapposite because Schmidt's indictment is not silent as to the elements of the offense charged. Therefore, we need only consider whether stealing firearms from the premises of a licensed dealer presents a serious potential risk of inquiry to another.[29]

The determinative question revolves around whether the elements of theft of a firearm from a federally licenced dealer include a serious threat of harm to another and whether this offense is similar in kind to the enumerated offenses listed in the ACCA. In *Begay*, the Supreme Court set out a two-prong test for determining whether an offense qualifies as a violent felony under the residual clause of the ACCA.[30] The first prong asks whether the offense inherently "present[s] a serious potential risk of physical injury to another."[31] We have emphasized that such a determination should be made through a categorical approach, not on the basis of the circumstances of a particular case.[32] Additionally, *Begay* does not suggest that we undertake a comparative risk analysis,[33] but rather an inquiry to assess whether the offense must involve "purposeful, violent, and aggressive conduct."[34]

Section 922(u) qualifies as a purposeful, violent, and aggressive offense under the first prong of the *Begay* test because at least one of the elements of the

---

[29] *See James*, 550 U.S. at 208 ("[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.").

[30] 553 U.S. at 137.

[31] *Id.* at 142.

[32] *United States v. Charles,* 301 F.3d 309, 313-14 (5th Cir. 2002) (en banc).

[33] *See Begay*, 553 U.S. at 142-43.

[34] *Chambers v. United States*, 129 S. Ct. 687, 692 (2009) (citation omitted).

offense includes the presence of a serious potential risk of physical injury to another.  The key elements of the offense are: (1) stealing or unlawfully taking away or carrying (2) from the person or premises of a licensed firearms dealer (3) any firearm in the licensee's business inventory.[35]  Although the first element, by itself, presents no serious potential risk of physical injury because it can be accomplished without confrontation, the second and third elements do present serious potential risks of physical harm to others.  The second element requires that, to constitute an offense, the firearms be stolen from an individual—the licensee—who, by definition, is likely to posses or have easy access to a firearm himself.  An important factor used to determine if an offense is a crime of violence is whether the action is inherently dangerous, and that fact is well known and well documented.[36]  Persons who steal firearms from a dealer have to know that doing so is inherently dangerous because they are stealing from a person who probably either possesses or has easy access to firearms with which to defend themselves and their property.  Likewise, the third element undoubtedly presents a serious potential risk of physical injury because stolen firearms are more likely to be used in connection with illegal and inherently harmful activities than are lawfully possessed guns: persons who lawfully obtain firearms almost always do so for legitimate purposes, such as hunting or target shooting.

The second prong of the *Begay* test asks whether an offense is "roughly similar, in kind as well as in degree of risk posed, to the [statutory] examples" of burglary, arson, extortion and offenses that involve use of explosives.[37]  The

---

[35] 18 U.S.C. § 922(u) (2002).

[36] *Cf. United States v. DeSantiago-Gonzalez,* 207 F.3d 261, 263 (5th Cir. 2000) (holding that Driving While Intoxicated is a crime of violence for the purposes of U.S.S.G. § 2L1.2(b)(1)(B)).

[37] *Begay*, 553 U.S. at 143.

purpose of this prong is to narrow the scope of the residual clause of the ACCA by distinguishing this crime from the set of all crimes that present a serious potential risk of physical injury.[38]  Obviously, from among the crimes listed in the ACCA, burglary most closely resembles theft of firearms from a licensed dealer.   Even though, as discussed above, § 922(u) firearm theft is not sufficiently close to burglary to qualify as enumerated under the ACCA, it is sufficiently similar to burglary to be deemed similar in kind and risk.  In the instant case, the offense constituted a burglary, but the perpetrators were charged under a different statute because of the nature of the items stolen.  It is likely that many of the crimes charged under § 922(u) could also be charged under a burglary statute. But, as noted, the theft of firearms is more dangerous than simple shoplifting or petty theft because it involves victims who are often armed themselves and loot that is likely to be used for violent purposes.  We are satisfied that theft of a firearm from a licensed federal dealer is sufficiently similar to burglary to qualify as a violent offense under the residual-clause prong of the ACCA.

### III.  Conclusion

Whether a § 922(u) conviction qualifies as a crime of violence for ACCA purposes is a novel issue.  The ACCA has three disjunctive prongs, under any one of which an offense may be deemed a crime of violence.  The first is when the offense has an element that encompasses the use of force; but § 922(u) contains no such element.  The second is when the offense is encompassed in one of the ACCA's enumerated felonies.  Here, the closest enumerated felony is burglary, but because § 922(u) lacks the element of unlawful or unprivileged entry, § 922(u) cannot be treated as burglary per se.  The third prong is the residual-

---

[38] *Id.* at 142.

clause prong, under which we must determine whether the offense constitutes a potential risk of serious harm to others and whether it is similar in risk and kind to one of the enumerated offenses. We conclude that, under the third prong, § 922(u) qualifies as a violent offense. Accordingly, Schmidt's sentence is AFFIRMED.