*226 DENNIS, Circuit Judge,
dissenting:
The majority erroneously concludes that the New Mexico offense of possession by a prisoner of a deadly weapon — here, a cudgel made of a dried paper magazine — N.M. Stat. Ann. § 30-22-16, is a “crime of violence” under the residual clause of § 4B1.2 of the Sentencing Guidelines, although the state statute criminalizes such possession even if the inmate never uses nor intends to use the weapon to harm or threaten another. In Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), the Supreme Court held that a “violent felony” under the nearly identical provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B),[1] must involve “purposeful, violent, and aggressive conduct.” The majority in the instant case mistakenly classifies the New Mexico crime at issue as a “crime of violence” on the theory that the “purposeful possession” of a deadly weapon in prison creates a “potential for violence.” This conclusion ignores the teaching of Begay, however, which requires a crime to be “violent and aggressive” as well as “purposeful” in order to fit the category of a violent felony or crime of violence. Because the crime at issue here is not “violent” or “aggressive,” the majority’s holding conflicts with the Guidelines’ intent, as clearly indicated by Begay. Accordingly, I respectfully dissent.
I

A

Begay held that to satisfy the definition of “violent felony” under the residual clause of the ACCA, which has practically the same definition as “crime of violence” under the residual clause of § 4B1.2, an offense must meet two criteria: First, the offense must involve conduct that “presents a serious potential risk of physical injury to another,” i.e., that it is “an extremely dangerous crime.” Id. at 141-42, 128 S.Ct. 1581 (internal quotation marks omitted). Additionally and separately, the offense must be “roughly similar, in kind as well as in degree of risk posed,” to the comparative offenses of “burglary [of a dwelling], arson, extortion, or crimes involving the use of explosives.” Id. at 142-43, 128 S.Ct. 1581 (emphasis added). Defining this second prong, the Court distilled the following similar attributes from the comparative offenses: They all “typically involve purposeful, violent, and aggressive conduct.” Id. at 144-45, 128 S.Ct. 1581 (internal quotation marks omitted). In applying its interpretation to the offense of driving under the influence, the Begay Court assumed that DUI involved conduct that presents a serious potential risk of physical injury, but, nonetheless, held that it was not an included offense because “statutes that forbid driving under the influence[ ] ... typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all.” Id. at 145, 128 S.Ct. 1581.
*227 It is clear, then, that an offense is not a crime of violence if it involves only a potential risk of physical injury, even if it is the result of purposeful conduct, as long as it is not violent and aggressive. See United States v. Herrick, 545 F.3d 53, 58-59 (1st Cir.2008) (“all three types of conduct — i.e., purposeful, violent and aggressive — are necessary for a predicate crime to qualify as ... a ‘crime of violence’ under the Guidelines”).[2] In other words, the potential risk of injury created by conduct that reflects the future potential for violent and aggressive conduct does not satisfy Begay’s test and fails to meet the definition of a crime of violence. See United States v. Polk, 577 F.3d 515, 519 (3d Cir.2009) (“Begay points out that even a serious potential for injury is not enough to qualify a crime [as a crime of violence]; the risk created must also be ‘similar in kind’ to the crimes set out .... The possibility that one will confront another person with violent results is not sufficient.” (citations omitted) (emphasis added)). According to Begay, a crime of violence depends on conduct that is at once purposeful, violent, and aggressive, not just purposeful and potentially violent.
Here, assuming arguendo that the offense of possession of a deadly weapon by an inmate presents a serious potential risk of physical injury, the offense does not reflect the aggressive and violent conduct encompassed in any of the comparative crimes of “burglary of a dwelling, arson, or extortion,” or crimes “involving [the] use of explosives.” Those crimes are marked by “aggressive, violent acts aimed at other persons or property where persons might be located and thereby injured.” United States v. Archer, 531 F.3d 1347, 1351 (11th Cir.2008). “They involve overt, active conduct that results in harm to a person or property.” Polk, 577 F.3d at 519; see also Herrick, 545 F.3d at 58 (“[A]ggressive may be defined as ‘tending toward or exhibiting aggression,’ which in turn is defined as ‘a forceful action or procedure (as an unprovoked attack) especially] when intended to dominate or master.’ Violence may be defined as ‘marked by extreme force or sudden intense activity.’” (citation omitted)). By contrast, the New Mexico offense of possession of a deadly weapon by an inmate “is a passive crime centering around possession, rather than around any overt action.” See Archer, 531 F.3d at 1351; see also Chambers, 129 S.Ct. at 689, 692 (failure to report for incarceration does not meet the definition of a crime of violence because it reflects “a form of inaction, a far cry from the ‘purposeful, violent, and aggressive conduct’ potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion”). “Post-Begay, the distinction between active and passive crimes is vital when evaluating offenses ... to determine if they entail ‘purposeful, violent, and aggressive conduct.’ ” Polk, 577 F.3d at 519.
An illustration of the difference “in kind” between the offense at issue here and the comparative crimes is that “[b]urglary requires both the intent to enter a building and the intent to commit a crime once inside. This second intent is what makes burglary purposeful, violent, and aggressive in all cases.” United States v. *228 Templeton, 543 F.3d 378, 383 (7th Cir. 2008).[3] Like burglary, the comparative offenses involve “intentionally encroaching on another’s property or person, or intentionally injuring another’s property or person.” Id. By contrast, the New Mexico crime of possession of a deadly weapon by an inmate does not require an intent to use the weapon for any particular purpose. It proscribes “any inmate of a penal institution, reformatory, jail or prison farm or ranch possessing any deadly weapon or explosive substance.” N.M. Stat. Ann. § 30-22-16. While the New Mexico court of appeals has said in dicta that the possession of a weapon by an inmate requires knowing possession, State v. Gonzalez, 137 N.M. 107, 107 P.3d 547, 552 (N.M.Ct.App. 2005), the New Mexico Supreme Court has said that “ ‘[e]vil intent or intended use for an improper purpose is not an element of the crime.’ ” State v. Baca, 114 N.M. 668, 845 P.2d 762, 768 (1992) (quoting People v. Velasquez, 158 Cal.App.3d 418, 204 Cal. Rptr. 640, 641 (1984)). Therefore, even assuming that the possession must be knowing, because the crime does not require an intent to use the weapon in a further criminal act, it fails to reflect similar aggressive or violent conduct as the comparative offenses.

B

While this court has never decided whether the simple possession of a weapon by an inmate satisfies Begay’s interpretation, our published decisions applying Be-gay’s prescribed analysis have consistently held that only offenses that involve conduct that is sufficiently violent and aggressive, as well as purposeful, meet the definition of a crime of violence. Recently, in United States v. Schmidt, No. 09-31138, 623 F.3d 257, 2010 WL 3910646 (5th Cir. Oct. 7, 2010), we held that the federal offense of stealing firearms from a licensed firearms dealer[4] was a violent felony under the residual clause of the ACCA. We noted that the offense in fact satisfied the elements of burglary, an enumerated offense in § 4B1.2. Id. at *5. Therefore, the similarity of purposeful, violent, and aggressive conduct to that enumerated crime was patent.
Earlier, in United States v. Hughes, 602 F.3d 669 (5th Cir.2010), we found that the federal offense of escape from an institution[5] also met Begay’s test. Specifically, we found that the aggressive and violent component was reflected by the initiating of hostilities that would ensue in the impending confrontation with law enforcement officials seeking to capture the escapee.[6] Id. at 677 (citing United States v. Harrimon, 568 F.3d 531 (5th Cir.2009)). Likewise, in Harrimon, we held that the Texas offense of evading arrest or detention by use of a vehicle satisfied Begay. *229 There, not only did we find that the offense was purposeful in that it required intentional conduct, but we also found that it was aggressive because it was “offensive and forceful and characterized by initiating hostilities or attacks,” and violent because “the use of a vehicle, usually a car, to evade arrest or detention typically involves violent force which the arresting officer must in some way overcome.” 568 F.3d at 534-35 (internal quotation marks omitted).
Finally, in United States v. Mohr, 554 F.3d 604 (5th Cir.2009), we held that the South Carolina offense of stalking is a crime of violence because it proscribes “words or conduct that are ‘intended to cause and does cause a targeted person’ to reasonably fear death, assault, bodily injury, criminal sexual contact, kidnaping or property damage to him or his family.” Id. at 609 (quoting S.C. Code Ann. § 16 — 3— 1700). We reasoned that “[tjhese outcomes are roughly analogous to the enumerated offenses set out in § 4B1.2.” Id. at 609-10. The fact that the defendant’s conduct directly impacted the victim resonates with the offensive and forceful conduct in Harrimon and therefore, reflects conduct that is easily described as aggressive and violent.
In light of these prior decisions of our court, the mere possession crime here does not meet the definition of a crime of violence. Unlike in Schmidt, where the offense was, practically speaking, identical to the enumerated offense of burglary, the crime here is closest to unlawful possession of a firearm by a felon, a crime that is expressly excluded from the definition of crime of violence. See U.S.S.G. § 4B1.2 cmt. n.l. Furthermore, the crime here is unlike the crimes in Hughes and Harrimon because it was not offensive and did not involve violent, forceful hostilities initiated by Marquez. Finally, very much unlike the stalking crime in Mohr, the passive possession crime here did not directly impact a victim, nor did it directly cause anyone to reasonably fear death, assault, bodily injury, criminal sexual contact, kidnaping or property damage.
II
The thrust of the majority’s position is that the possession of a deadly weapon by an inmate is a crime of violence because it poses a serious potential risk of physical injury and it reflects a potential for violence as with other comparative crimes, such as burglary. This reasoning is in effect the same analysis articulated by Justice Scalia concurring in the judgment in Begay. To define a crime of violence, Justice Scalia rejected the majority’s “similar, in kind as well as in degree of risk posed” test and proposed a “comparative degree of risk” approach, which would include any offense that objectively presents a similar degree or likelihood of risk of physical injury as the enumerated crimes. See 553 U.S. at 143-44, 128 S.Ct. 1581. However, the Begay majority expressly rejected that approach, and held that for an offense to constitute a crime of violence, it is not enough that it presents a similar degree of risk as the enumerated crimes— it must also be similar in kind, as reflected by “purposeful, violent, and aggressive” conduct. See id.; Templeton, 543 F.3d at 383 (“It will not do to argue ... that escape is enough like burglary to make it a crime of violence. Doubtless for both crimes there is a chance the criminal will confront another person with violent results ____ But Begay requires the crime to be [purposeful, violent, and aggressive].” At most, escape and burglary have “a common result: in both cases injuries may follow confrontations. Begay requires similarities other than risk of injury.”); Polk, 577 F.3d at 519.[7]
*230 The majority’s reliance on United States v. Zuniga, 553 F.3d 1330 (10th Cir.2009), which held that the Texas offense of possession of a deadly weapon in prison is a violent felony under the ACCA, is likewise unavailing because the Tenth Circuit’s reasoning relies on the same fallacy that was rejected by the Begay Court. In analyzing the second prong of Begay, the Zuniga court determined that “an offense is violent if it creates a likelihood of violence .... Similarly, possession of a deadly weapon in a penal institution creates the possibility — even the likelihood — of a future violent confrontation.” Id. at 1335.[8] The court also found the crime was aggressive because, “[w]e consider it unlikely that any conduct properly characterized as ‘violent’ could not also be characterized as ‘aggressive.’ ... When a prisoner carries a deadly weapon, that behavior indicates a readiness to enter into conflict ....” Id. at 1335-36.
This reasoning' is flawed because it views the likelihood of violence and potential for aggression as dispositive; that by intentionally possessing a weapon in prison, an inmate is engaged in conduct that presents a high likelihood of violence and is therefore violent and, consequently, aggressive. This conclusion, draws any intentional offense with a “serious potential risk of physical injury” into the definition of a crime of violence and, in essence, adopts Justice Scalia’s minority view. But Begay’s second requirement entails more than the mere likelihood that another will be physically injured as a result of the offense — it requires conduct that is similar to the comparative offenses, that is, purposeful, violent, and aggressive conduct. Therefore, Zuniga misapplies Begay and fails to persuade me that possession of a weapon by an inmate is a crime of violence.[9]
The majority further attempts to shoehorn “the possibility that one will confront another with violent results” into the analysis of the second prong of Begay. See Majority Op. at 225. The majority’s only support is a statement from James v. United States that “[t]he main risk of burglary arises not from the simple physical act of wrongfully entering into another’s property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party.” 550 U.S. 192, 203, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), quoted in Majori *231 ty Op. at 225. However, James was decided before Begay and therefore does not alter Begay’s prescribed analysis. As discussed above, Begay expressly extricates the analysis of the potential risk of physical injury — Begay’s first prong— from the analysis of similarity, in kind as well as in degree of risk posed — Begay’s second prong. Furthermore, the Court’s analysis in Chambers demonstrates that the Court continues to separate these inquiries. In Chambers, the Court first analyzed the offense under Begay’s second prong and held that the crime was not purposeful, violent, and aggressive. See 129 S.Ct. at 692. Then, the Court turned back to Begay’s first prong, which it recapitulated as: “whether ... an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a ‘serious potential risk of physical injury.’ ” Id. There, the Court considered and rejected the government’s argument that the potential for future violent conduct made the offense a crime of violence, and relying on a statistical analysis, held that the crime did not meet the first Begay prong. Id. at 692-93. Thus, the majority mistakenly imports the possibility of injury into its analysis of Begay’s second prong.
Additionally, the majority analogizes the possession of a weapon by an inmate to the unlawful possession of one of the extremely dangerous weapons identified in the Sentencing Guidelines as a crime of violence. See U.S.S.G. § 4B1.2 cmt. n.l (“ ‘Crime of violence’ does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a),” which includes sawed-off shotguns, machine guns, silencers, and some types of bombs, grenades, rockets, and missiles). When the Sentencing Commission added this commentary it said that “Congress has determined that those firearms described in 26 U.S.C. § 5845(a) are inherently dangerous and when possessed unlawfully, serve only violent purposes.” U.S.S.G. supp. app. C at 134, amend. 674 (Reason for Amendment to Application Note 1 to § 4B1.2) (effective Nov. 1, 2004). However, unlike a bomb or machine gun, the “club” found in Marquez’s cell — a tightly-rolled, wetted down magazine that had been allowed to dry- — does not reflect an unusual measure of dangerousness. It certainly does not surpass that of, say, a handgun, which, if possessed unlawfully by a felon, would not constitute a crime of violence. And a simple, makeshift club does not necessarily serve only aggressive and violent purposes. Marquez could have possessed the weapon for the purpose of deterring others from attacking him. Nor is the fact that the possession occurred in a prison enough, on its own, to make this offense a crime of violence. See Polk, 577 F.3d at 519-20 (“Begay excludes th[e] mode of analysis” that would define possession of a weapon by an inmate as a crime of violence simply because “no permissible use exists for a prisoner to possess a weapon — We do not dispute the inherent dangers of possessing a [weapon] in prison, but this alone cannot transform the mere possession offense into one that is similar to the crimes listed.”).
The majority is correct that we cannot “minimize[ ] the nature of Marquez’s prior conviction by describing the club he possessed in prison, which was made of a rolled, dried, and hardened magazine or other type of paper” in order “to diminish the dangerousness of the particular weapon he possessed.” Majority Op. at 225. But we cannot close our eyes to the nature of the weapon Marquez possessed either. Our inquiry here requires us to decide if Marquez’s offense was “similar, in kind as well as in degree of risk posed” to the § 4B1.2 comparative crimes. Marquez did not object to the presentence report’s description of the hardened paper club he *232 possessed and he acknowledged that it was a “deadly weapon” under New Mexico law.[10] However, the definition of the New Mexico offense of possession of a deadly weapon by an inmate also clearly makes it a purely passive, possessory crime, requiring no element of intent to use the weapon, nor any violence or aggression; and obviously demonstrates that it is dissimilar from possession of one of the inherently and extremely dangerous weapons, such as a bomb or sawed-off shotgun, identified in § 5845(a), where the majority erroneously tries to shoehorn it. The mere possession of a weapon other than those identified in § 5845(a), which would not otherwise be a crime of violence, is not transformed into a crime of violence under § 4B1.2 by virtue of where the weapon is possessed. Begay and Chambers require more than similarity in degree of risk posed, based on the circumstances; they require as well similarity in kind to the comparative offenses, such as burglary of a dwelling. The Sentencing Commission created a very narrow category of crimes of violence for weapons possession offenses that includes only weapons that “Congress has determined ... are inherently dangerous and when possessed unlawfully, serve only violent purposes.” See U.S.S.G. supp. app. C at 134, amend. 674. Therefore, key to the Commission’s classification of the unlawful possession of a bomb or sawed-off shotgun by a felon as a crime of violence is the inherent dangerousness of the weapon — as found by Congress — not where the weapon is possessed. Id. The majority erroneously compares Marquez’s offense to the possession of a bomb or sawed-off shotgun; however, the inherent danger present in those weapons is not present in a club fashioned from hard, dried, paper.
Ill
The New Mexico offense of possession of a deadly weapon by an inmate does not require violent and aggressive conduct and therefore fails under Begay’s analysis to satisfy the definition of a crime of violence. The offense does not require intent to use the weapon for any particular purpose; rather, it punishes mere possession. This passive crime does not involve any overt act aimed at a person or property. I agree with the reasoning of the Third Circuit in Polk and the Eleventh Circuit in Archer, that under Begay, mere possession of a dangerous instrument, without more, does not necessarily involve violent or aggressive conduct. Therefore, while I agree that the offense involves a serious potential risk of physical injury, in light of Begay, I cannot agree with the majority that the offense is a “crime of violence” under the residual clause of § 4B1.2.

. Compare 18 U.S.C. § 924(e)(2)(B) ("violent felony”), with U.S.S.G. § 4B1.2 ("crime of violence”). Begay controls our analysis of the definition of "crime of violence” under the residual clause of § 4B1.2 of the Sentencing Guidelines. United States v. Hughes, 602 F.3d 669, 673 n. 1 (5th Cir.2010) (We " ‘appl[y] our holdings under the residual clause of the ACCA to analyze the definition of crimes of violence under § 4B1.2, and vice versa.’ ” (quoting United States v. Mohr, 554 F.3d 604, 609 n. 4 (5th Cir.2009))); see also United States v. Thomas, 484 F.3d 542 (8th Cir.2007) (construing "crime of violence” under § 4B1.2), vacated, 553 U.S. 1001, 128 S.Ct. 2046, 170 L.Ed.2d 788 (2008) (remanding "for further consideration in light of Begay").

. See also Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 691-92, 172 L.Ed.2d 484 (2009) (discussing the conduct elements as conjunctive: "purposeful, violent, and aggressive conduct” (emphasis added) (internal quotation marks omitted)); United States v. Williams, 537 F.3d 969, 975 (8th Cir.2008) (“The Supreme Court’s description of conduct that is similar in kind consistently uses ‘and’ to join the words ‘purposeful, violent, and aggressive conduct.’ Therefore, all characteristics should typically be present before a[] ... crime reaches the level of an example crime.” (citation omitted)).

. As the Seventh Circuit reasoned in explaining why some escape offenses (e.g., failing to return from a furlough) are not crimes of violence:
The crime does not require any violent or aggressive act. Although the statute does require intent, the required mental state is only intent to be free of custody, not intent to injure or threaten anyone. It is easy to [commit the offense] without intending or accomplishing the destruction of property or acting in an aggressive, violence-provoking manner that could jeopardize guards or bystanders. Templeton, 543 F.3d at 383.

. See 18 U.S.C. § 922(u).

. See id. § 751(a).

. We also noted that escape is typically purposeful and when “escapes cause injuries, those injuries typically result from intentional action,” and that escape reflected more violent conduct in comparison to the failure-to-report crime in Chambers. 602 F.3d at 677.

. See also United States v. Vincent, 575 F.3d 820, 830-31 (8th Cir.2009) (Gruender, J., dissenting) (rejecting the majority's contention that the "possession of a sawed-off shotgun is illegal precisely because it enables violence or the threat of violence,” which is what makes it "like the listed crimes” in the residual clause of the ACCA, because it fails to address "whether the crime typically involves violent and aggressive conduct. This subtle difference in terminology has significant consequences; after all, many crimes that do not themselves involve violent and aggressive conduct may nevertheless enable violence or the threat of violence.” (internal quotation marks and brackets omitted)).

. The Tenth Circuit easily concluded that the offense met Begay's first prong of presenting a serious potential risk of physical injury. 553 F.3d at 1334.

. The Ninth Circuit recently reaffirmed its pre-Begay decision in United States v. Young, 990 F.2d 469 (9th Cir.1993), that possession of a weapon in prison in violation of California Penal Code § 4574(a) is a crime of violence under § 4B1.2. See United States v. Mitchell, 624 F.3d 1026-27, 2010 WL 4105220, at *2 (9th Cir.2010). However, the Mitchell court did not cite Begay or Chambers and, in reaching this conclusion, instead reasoned only that "possession of a shank in jail ... created a viable risk that a person might be injured, which made it a crime of violence.” Id. That rationale directly conflicts with Begay and is therefore, not persuasive.

. Additionally, because New Mexico defines "deadly weapon” to include weapons that are and are not identified in § 5845(a), see N.M. Stat. Ann. § 30-l-12(B) ("deadly weapon” includes, among other things, “any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of ... bludgeons”), the New Mexico offense of possession of a "deadly weapon” by an inmate includes offenses that are crimes of violence as well as offenses that are not. See U.S.S.G. § 4B1.2 cmt. n.l. Where, as here, the statute of conviction encompasses multiple offenses and not all of those offenses constitute crimes of violence, the Supreme Court has held that we must first determine the relevant "classification of the crime.” See Chambers, 129 S.Ct. at 690-91. In doing so, it is appropriate to consider, for instance, charging documents, plea agreements, and "comparable judicial record[s],” and "any explicit factual finding by the trial judge to which the defendant assented.” Shepard v. United States, 544 U.S. 13, 25, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). Therefore, it is perfectly in line with the Supreme Court's decisions that we consider the nature of the weapon that Marquez possessed.