# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals Fifth Circuit**

**F I L E D**

November 10, 2010

No. 09-50372

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

FRANCISCO JAVIER MARQUEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before BARKSDALE, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Francisco Javier Marquez contends that his prior conviction for possession of a deadly weapon by a prisoner is not a crime of violence within the meaning of section 4B1.2(a)(2) of the Sentencing Guidelines[1] and therefore that the district court erred in sentencing him as a career offender under section 4B1.1.[2] We affirm.

---

[1] U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 4B1.2(a)(2) (2009).

[2] *Id.* § 4B1.1.

No. 09-50372

## I

Marquez pled guilty to possessing more than 100 kilograms of marijuana with the intent to distribute it. The presentence report recommended that the district court sentence Marquez under the career-offender guidelines based on Marquez's prior New Mexico convictions for possession of cocaine with the intent to distribute and possession of a deadly weapon by a prisoner. Only the latter conviction is at issue in this appeal. The New Mexico statute under which Marquez was convicted provides that "[p]ossession of [a] deadly weapon or explosive by [a] prisoner in lawful custody" is a second degree felony.[3] His indictment charged him under this statute, alleging that he "possess[ed] a deadly weapon, a club[,] contrary to Section 30-22-16, NMSA 1978," while an "inmate of the Bernalillo County Detention Center." A deadly weapon is defined under applicable New Mexico law as "any weapon which is capable of producing death or great bodily harm," and great bodily harm "means an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body."[4]

Marquez objected to the presentence report, arguing that his offense of possession of a deadly weapon by a prisoner was not a crime of violence in light of the Supreme Court's decision in *Begay v. United States*.[5] Marquez contends that his prior conviction is not for an offense that "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."[6] He argues that

---

[3] N.M. Stat. Ann. § 30-22-16.

[4] N.M. Stat. Ann. § 30-1-12(A), (B).

[5] 553 U.S. 137 (2008).

[6] U.S.S.G. § 4B1.2(a)(2).

No. 09-50372

his properly calculated Guidelines' sentencing range is 92 to 155 months of imprisonment. The district court determined that the career-offender enhancement applied and overruled the objection. The court concluded that the advisory Guidelines' range was 188 to 235 months of imprisonment and sentenced Marquez to 188 months' imprisonment. This appeal followed.

## II

We review the district court's interpretation of the Sentencing Guidelines de novo.[7]   A defendant may be sentenced as a career offender under the Guidelines if "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense" and the defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense."[8]   The term "crime of violence" is defined in section 4B1.2 as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1)   has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2)   is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[9]

The parties agree that we are concerned only with what is sometimes called "the residual clause" of section 4B1.2(a)(2),[10] and therefore, we must

---

[7] *United States v. Mohr*, 554 F.3d 604, 606 (5th Cir.), *cert. denied*, 130 S. Ct. 56 (2009).

[8] U.S.S.G. § 4B1.1(a).

[9] *Id.* § 4B1.2(a).

[10] *See, e.g., United States v. Anderson*, 559 F.3d 348, 355 (5th Cir.) (referring to U.S.S.G. § 4B1.2(a)(2) as a "residual clause"), *cert. denied*, 129 S. Ct. 2814 (2009); *Mohr*, 554 F.3d at 607 (same); *see also Johnson v. United States*, 130 S.Ct. 1265, 1274 (2010) (discussing "the so-called 'residual clause'" in 18 U.S.C. § 924(e)(2)(B)(ii)); *Chambers v. United States*, 129 S.Ct. 687, 689 (2009) (referring to clause (ii) of § 924(e)(2)(B) as the "ACCA's so-called residual

No. 09-50372

determine whether Marquez's conviction under New Mexico law "otherwise involves conduct that presents a serious potential risk of physical injury to another." We do not write on a clean slate, and we begin with the context in which we must consider the answer to this question.

The comments to section 4B1.1 of the Guidelines reflect that sections 4B1.1 and 4B1.2, embodying the career offender guidelines, were promulgated to implement the directive in 28 U.S.C. § 994(h), which "mandates that the Commission assure that certain 'career' offenders receive a sentence of imprisonment 'at or near the maximum term authorized.'"[11] The term "crime of violence" is not defined in § 994(h); however, 18 U.S.C. § 16 does define that term.[12] The comments to section 4B1.1 explain that the Commission implemented the directive in § 994(h) by "tracking in large part the criteria set forth in 28 U.S.C. § 994(h)," but that "the Commission has modified this definition in several respects to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and to avoid 'unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct.'"[13]

---

clause").

[11] U.S.S.G. § 4b1.1 cmt. background.

[12] 18 U.S.C. § 16 provides:

The term "crime of violence" means--

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

[13] U.S.S.G. § 4B1.1 cmt. background (quoting 28 U.S.C. § 991(b)(1)(B)).

No. 09-50372

The black letter text of the definition of "crime of violence" in section 4B1.2 of the Guidelines is very similar to the definition of "violent felony" in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924 (e)(2)(B).[14]  Within subsections (1) and (2), the only difference is that the Guidelines have inserted "of a dwelling" after "burglary."[15]  However, the application notes to section 4B1.2 of the Guidelines gives further guidance to how the term "crime of violence" is to be applied, including additional enumerated offenses not included in the ACCA and an elaboration regarding the residual clause:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.  Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.[16]

The commentary to section 4B1.2 expressly provides that possession of a firearm by a felon is not a crime of violence unless the weapon is "a sawed-off

---

[14] *Compare id.* § 4B1.2(a) *with* 18 U.S.C. § 924(e)(2)(B), which provides in pertinent part:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that--

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

[15] *See* U.S.S.G. § 4B1.2(a)(2).

[16] U.S.S.G. § 4B1.2 cmt. n.1.

No. 09-50372

shotgun or sawed-off rifle, silencer, bomb, or machine gun."[17]  Marquez's prior conviction was not, however, for being a felon in possession of a firearm.  He was convicted under state law for possession of a deadly weapon by an inmate, which is similar to the federal offense defined in 18 U.S.C. § 1791, prohibiting an inmate's possession of "a weapon (other than a firearm or destructive device), or an object that is designed or intended to be used as a weapon or to facilitate escape from a prison."[18]

Our construction of the career-offender Guideline sections are further informed by two decisions of the Supreme Court construing the ACCA.[19] Although the text of the ACCA defining "violent felony" and the Guidelines definition and commentary regarding a "crime of violence" are not identical, as discussed above, our court as well as other circuit courts have concluded that the Supreme Court's decisions interpreting the meaning of "violent felony" under the ACCA are at least instructive.[20]  In *Begay*, the Court held that driving under the influence of alcohol was not a "violent felony" within the meaning of the ACCA.[21]

---

[17] *Id.* ("'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a)." The note also provides, "[u]nlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (*e.g.*, a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a 'crime of violence.'").

[18] 18 U.S.C. § 1791(d)(1)(B).

[19] *See Chambers v. United States*, 129 S. Ct. 687 (2009); *Begay v. United States*, 553 U.S. 137 (2008).

[20] *See United States v. Mohr*, 554 F.3d 604, 609 (5th Cir.), *cert. denied*, 130 S. Ct. 56 (2009); *see also United States v. Polk*, 577 F.3d 515, 518-19 (3d Cir. 2009) (observing that the Supreme Court vacated and remanded for reconsideration in light of *Begay* courts of appeals' decisions applying the career offender Guidelines, leading the Third Circuit to conclude that "this leaves little doubt that *Begay* bears on our determination of whether to classify an offense as a 'crime of violence.'"); *United States v. Bartee*, 529 F.3d 357 (6th Cir. 2008); *United States v. Williams*, 537 F.3d 969 (8th Cir. 2008).

[21] 553 U.S. at 139.

No. 09-50372

In *Chambers*, the Court held that a "failure to report" for penal confinement was not a violent felony under the ACCA.[22]   Prior to the issuance of these decisions, our court had held that the knowing possession of a deadly weapon in a penal institution is a crime of violence under U.S.S.G. § 4B1.2(a)(2).[23]   Marquez contends that our construction of section 4B1.2 was erroneous in light of *Begay*.

We therefore begin our analysis with a consideration of the Supreme Court's reasoning in *Begay* and its subsequent decision in *Chambers*. The Court concluded  in *Begay* that the presence of the enumerated offenses of burglary, arson, extortion, or offenses that involve the use of explosives "indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential of risk of physical injury to another.'"[24]   The Court noted that the enumerated offenses "all typically involve purposeful, 'violent,' and 'aggressive' conduct."[25]   This was important because such conduct makes it "more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim."[26]   The crime of driving under the influence was not such a crime. "By way of contrast, statutes that forbid driving under the influence . . . typically do not insist on purposeful, violent, and aggressive conduct."[27]   The Court explained that DUI offenses "are, or are most nearly comparable to, crimes that

---

[22] 129 S.Ct. at 689.

[23] *United States v. Rodriguez-Jaimes*, 481 F.3d 283, 287 (5th Cir. 2007).

[24] 553 U.S. at 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)); *see also id.* at 143 ("we should read the examples as limiting crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves"); *id.* ("The statute's history offers further support for our conclusion that the examples in clause (ii) limit the scope of the clause to crimes that are similar to the examples themselves.").

[25] *Id.* at 144 (quoting *United States v. Begay*, 470 F.3d 964, 980 (10th Cir. 2006) (MCCONNELL, J., dissenting in part)).

[26] *Id.* at 145.

[27] *Id.*

impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all."[28]  Drunk driving "need not be purposeful or deliberate."[29]  It involves negligence or recklessness, the Court reasoned. The ACCA "focuses upon the special danger created when a particular type of offender–a violent criminal or drug trafficker–possesses a gun."[30]  To determine which offenders fall into this category, "the Act looks to past crimes. This is because an offender's criminal history is relevant to . . . the kind or degree of danger the offender would pose were he to possess a gun."[31]  The Court concluded that although driving under the influence "reveal[s] a degree of callousness toward risk," crimes involving intentional or purposeful conduct "also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger," while strict liability crimes do not.[32]

The Supreme Court then listed examples of crimes that, "though dangerous, are not typically committed by those whom one normally labels 'armed career criminals.'"[33]  The examples given by the Court were reckless pollution, negligent pollution of a sewer system, recklessly tampering with consumer products, and seamen's inattention to duty causing serious accidents, all of which presented a risk of serious injury.[34]  The Court had already emphasized at the outset of its opinion that "[d]runk driving is an extremely

---

[28] *Id.*

[29] *Id*

[30] *Id.* at 146.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 146-47.

dangerous crime," responsible for thousands of deaths each year,[35] and in discussing strict liability offenses such as DUI, the Court reiterated that "[t]he distinction we make does not minimize the seriousness of the risks attached to driving under the influence."[36]   But the risk of physical injury was not determinative of whether a crime was a violent felony.[37]   "[A] prior record of violent and aggressive crimes committed intentionally" is "associated with a likelihood of future violent, aggressive, and purposeful 'armed career criminal' behavior in a way that" strict liability crimes are not.[38]

Less than a year after it decided *Begay*, the Supreme Court provided further guidance in *Chambers v. United States*[39] as to the meaning of "violent felony" as used in the ACCA.  The prior conviction at issue was for failure to report for penal confinement, a violation of Illinois law.[40]   After applying its categorical approach to the Illinois statute under which Chambers had been convicted, the Court concluded that failure to report "is a separate crime, different from escape," and that "[t]he behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody."[41]   The Court concluded that failure to report to a penal institution for confinement "does not 'involve conduct that presents a serious potential risk of physical injury

---

[35] *Id.* at 141.

[36] *Id.* at 147.

[37] *See id.*

[38] *Id.* at 148.

[39] 129 S.Ct. 687 (2009).

[40] *Id.* at 690.

[41] *Id.* at 691.

to another.'"[42]   The Court reasoned, "[c]onceptually speaking, the crime amounts to a form of inaction, a far cry from the 'purposeful, violent, and aggressive conduct' potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion."[43]   The Court rejected the Government's argument that "a failure to report reveals the offender's special, strong aversion to penal custody," observing that "[t]he question is whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'"[44]

In the present case, Marquez contends that his prior conviction is similar to the DUI at issue in *Begay*. There is authority from the New Mexico Supreme Court indicating that possession of a deadly weapon in prison[45] is "a crime closely approaching a strict liability crime."[46] The New Mexico court agreed with a California appellate court that "'[e]vil intent or intended use for an improper purpose is not an element of the crime.'"[47]   The New Mexico court then considered whether duress was a defense to this offense, recognizing that some states have held that duress is not a defense because of the need to protect

---

[42] *Id.* (quoting the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii)).

[43] *Id.* at 692 (quoting *Begay*, 553 U.S. at 145-46).

[44] *Id.* (quoting § 924(e)(2)(B)(ii)).

[45] N.M. STAT. ANN. § 30-22-16.

[46] *State v. Baca*, 845 P.2d 762, 768 (N.M. 1992); *see also id.* (referring to the offense as "a near strict liability crime"); *id.* (discussing "the high level of protection afforded by a statute approaching strict liability"); *id.* at 769 (identifying "the purpose of the near strict liability statute").

[47] *Id.* at 768 (quoting *People v. Velasquez*, 204 Cal. Rptr. 640, 641 (Cal. Ct. App. 1984)).

inmates and officers from assaults with dangerous weapons.[48]   However, the New Mexico court did not follow suit and instead recognized a narrow duress exception, drawing on federal case law regarding duress as a defense to the crime of felon in possession of a firearm.[49]

Subsequently, the New Mexico court of appeals concluded in dicta that the offense of possessing a deadly weapon by a prisoner is not, strictly speaking, a strict liability offense because the mens rea required is knowing possession.[50] The New Mexico court of appeals observed that "[a]lthough the statute is silent with respect to the mens rea element, the uniform jury instruction for the crime requires the jury to find that the accused possessed a deadly weapon," and "that if possession is contested the instruction on possession at UJI 14-130 NMRA should also be given."[51]   The uniform jury instruction to which the court referred provides that "[a] person is in possession of (*name of object*) when, on the occasion in question, he knows what it is, he knows it is on his person or in his presence and he exercises control over it."[52]   The New Mexico court also cited as authoritative an Oregon decision that the New Mexico court described in a parenthetical as "stating statute prohibiting possessing, carrying, or having

---

[48] *Id.* (citing *People v. Rau*, 436 N.W.2d 409 (Mich. Ct. App. 1989); *Velasquez*, 204 Cal.Rptr. at 643).

[49] *Id.* at 768-69 (holding that to establish a defense of duress "the defendant must produce sufficient evidence that:  (1) he was under an unlawful and imminent threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation that would likely compel him to engage in the criminal conduct; (3) he did not have a reasonable legal alternative (in other words, he could not have reasonably avoided the threatened harm or the criminal conduct in which he engaged); and (4) a direct causal relationship existed between the criminal action and the avoidance of the threatened harm," and that "[w]e agree with the federal courts that 'the keystone of the analysis is that the defendant must have no alternative–either before or during the event–to avoid violating the law.'" (citations omitted)).

[50] *State v. Gonzalez*, 107 P.3d 547, 552 (N.M. Ct. App. 2005).

[51] *Id.*

[52] N.M. RULES ANN., Crim. UJI 14-130.

weapons in one's custody and control in a penal institution not meant to include unknowing acts."[53]  We accordingly have no reason to doubt that although the crime of which Marquez was previously convicted approaches strict liability, his offense was a knowing possession of a deadly weapon in prison, and the elements of duress as defined by the New Mexico court were not present.  This means, at a minimum, that he was not under an unlawful or imminent threat of death or serious bodily injury and did not recklessly place himself in a situation that would likely compel him to possess the deadly weapon.  Marquez's offense involved intentional or purposeful conduct.

We are persuaded, based on the Supreme Court's reasoning in *Begay*[54] and *Chambers*,[55] that Marquez's conviction for possession of a deadly weapon by a prisoner in a penal institution is a crime of violence.  This offense is unlike the strict liability crimes that the Court specifically identified in *Begay*, such as driving under the influence, reckless pollution, negligent pollution of a sewer system, recklessly tampering with consumer products, or seamen whose inattention to duty causes serious accidents.[56]  Undoubtedly, those crimes, like a prisoner's possession of a deadly weapon, present a serious potential risk of physical injury to another.[57]  But a prisoner's possession of a deadly weapon is more similar "in kind"[58] to arson, burglary, extortion, or crimes involving the use of explosives.  A prisoner's possession of a deadly weapon is an intentional act

---

[53] *Gonzalez*, 107 P.3d at 552 (citing *State v. Wolfe*, 605 P.2d 1185, 1188 (Or. 1980)).

[54] *Begay v. United States*, 553 U.S. 137, 145-48 (2008).

[55] *Chambers v. United States*, 129 S.Ct. 687, 691-92 (2009).

[56] *See Begay*, 553 U.S. at 146-47.

[57] *Id.* (describing the strict liability offenses identified as "dangerous").

[58] *Id.* at 143.

No. 09-50372

"associated with a likelihood of future violent . . . behavior in a way that"[59] the strict liability crimes identified in *Begay* are not.  The Supreme Court explained in *Begay* that the enumerated crimes, including burglary, "all typically involve purposeful, violent, and aggressive conduct,"[60] and that this "conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim."[61]  The Court distinguished burglary and arson from driving under the influence, observing "[i]n both instances, the offender's prior crimes reveal a degree of callousness toward risk, but in the former instance they also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger."[62]  A prisoner in possession of a deadly weapon within a penal institution is significantly more likely to attack or physically resist an apprehender, such as a guard, or another inmate.[63]

The kind of risk posed by an inmate in possession of a deadly weapon is decidedly different from the strict liability offenses identified in *Begay* and very similar in kind and degree to the risk posed by the crime of burglary of a dwelling.  A burglar may not intend to injure anyone when he unlawfully invades a residence for the purpose of theft.  A burglar may even choose to commit the crime when no one is home.  But burglary is nonetheless considered

---

[59] *Id.* at 148.

[60] *Id.* at 144-45 (citation omitted).

[61] *Id.* at 145

[62] *Id.* 146.

[63] *See United States v. Robles-Rodriguez*, 204 F. App'x 504, 506-07 (5th Cir. 2006) (unpublished) (per curiam) (noting that "an inmate's possession, while in prison, of an instrument designed and intended to be used as a weapon, carries with it the same inherent potential to 'explode into violence' that drove our holding in *Ruiz*" that "an escape or an attempt to escape from U.S. custody in a prison camp constitutes a crime of violence.") (quoting *United States v. Ruiz*, 180 F.3d 675, 676-77 (5th Cir. 1999)).

13

purposeful, violent, and aggressive conduct.[64]   As the Supreme Court has recognized, "[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party."[65]   The Supreme Court concluded in *Begay* that commission of burglary "show[s] an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger."[66]   By analogy, an inmate may not intend to attack another person when he obtains a deadly weapon, but at a minimum his intentional possession of a deadly weapon signals his willingness to use it if, in his mind, the occasion warrants it.   Like burglary, the "main risk" of an inmate in possession of a deadly weapon is "the possibility of a face-to-face confrontation" with another person.   A past crime of possessing a deadly weapon while incarcerated "is relevant to the question [of] whether [a defendant] is a career criminal,"[67] because it is an indicator that he "is the kind of person who might deliberately" use a deadly weapon to inflict serious bodily injury on another person, including "point[ing] the gun and pull[ing] the trigger."[68]

Possession of a deadly weapon in prison is similar in kind, and in degree of risk posed, to another of the enumerated crimes of violence under the commentary to the Guidelines, which is unlawful possession of a firearm described in 26 U.S.C. § 5845(a), such as a sawed-off shotgun.[69]   The weapons

---

[64] *See Begay*, 553 U.S. at 144-45.

[65] *James v. United States*, 550 U.S. 192, 203 (2007).

[66] *Begay*, 553 U.S. at 146.

[67] *Id.*

[68] *Id.*

[69] U.S.S.G. § 4B1.2 cmt. n.1 ("'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a)."); *see also Begay*, 553 U.S. at 146.

included in § 5845(a) are primarily used for violent purposes when unlawfully possessed.[70] The possession of a deadly weapon in prison is primarily for violent purposes, as there is no legitimate reason for the possession.[71] Importantly, the inclusion of the enumerated offense of possession of certain prohibited weapons refutes Marquez's argument that a possession offense cannot be a crime of violence.

The offense of possession of a deadly weapon by an inmate differs from a generic felon in possession of a firearm offense, which is specifically excluded under the Guidelines as a crime of violence as defined in section 4B1.2 unless the firearm was one of the enumerated varieties.[72] A felon may be in possession of certain firearms, such as a pistol or hunting rifle, for recreational purposes, even though that possession is unlawful. By contrast, as noted above, there is no purpose for possession of a deadly weapon in prison other than to have the means to initiate violence or respond to violence with violence. In that regard, possession of a deadly weapon by one who is incarcerated is similar to possession of a sawed-off shotgun or one of the other weapons enumerated in section 4B1.2,[73] possession of which will result in a sentencing enhancement.

---

[70] *See United States v. Jennings*, 195 F.3d 795, 799 (5th Cir. 1999) (recognizing that the unlawful possession of the weapons listed in 26 U.S.C. § 5845(a) creates a "virtual inevitability that such possession will result in violence").

[71] *See United States v. Rodriguez-Jaimes*, 481 F.3d 283, 287 (5th Cir. 2007) ("That fact [that the possession offense occurs in prison rather than in the outside world] creates a perpetual risk of injury and precludes any legitimate reasons that a non-incarcerated individual could have for possessing a weapon (e.g., recreation).") (quoting *United States v. Robles-Rodriguez*, 204 F. App'x 504, 507 (5th Cir. 2006) (unpublished) (per curiam) (internal quotation marks omitted)).

[72] U.S.S.G. § 4B1.2 cmt. n.1.

[73] *Id.*

No. 09-50372

## III

We are not the first circuit court to consider whether possession of a deadly weapon by an inmate is a crime of violence or a violent felony, and there is a split of authority. The Tenth Circuit concluded that such an offense is a "violent felony" within the meaning of the ACCA.[74] Subsequently, the Third Circuit disagreed, concluding that such an offense is not a "crime of violence" within the meaning of section 4B1.2 of the Guidelines.[75] Neither court had difficulty in concluding that an inmate's possession of a deadly weapon presented a serious potential risk of physical injury.[76] The courts parted company over whether such an offense is similar in kind, as well as in degree of risk, to burglary, arson, extortion, or crimes involving explosives.[77]

In *Zuniga*, the Tenth Circuit reasoned that a prior Texas conviction for possession of a deadly weapon in prison was not a strict liability crime because under Texas law, it required either intentional or reckless conduct.[78] The Tenth Circuit also reasoned that the crime was violent because it created a likelihood of violence, not unlike that inherent in burglary.[79] The court was persuaded that

---

[74] *United States v. Zuniga*, 553 F.3d 1330, 1332 (10th Cir.), *cert. denied*, 130 S. Ct. 62 (2009).

[75] *United States v. Polk*, 577 F.3d 515, 517 (3d Cir. 2009).

[76] *Id.* at 519 (observing that "no doubt possession of a weapon in prison involves a high degree of risk" and recognizing it presented the "possibility that one will confront another person with violent results"); *Zuniga*, 553 F.3d at 1334-35 (concluding that the offense "clearly involves conduct that presents a serious potential risk of physical injury to another").

[77] *Polk*, 577 F.3d at 519 ("we hold that possession of a weapon, even in a prison, is not 'roughly similar, in kind as well as in degree of risk posed,' to the enumerated crimes of burglary, arson, extortion, or use of explosives") (quoting *Begay*, 553 U.S. at 143); *Zuniga*, 553 F.3d at 1334 (concluding that offense is "'roughly similar, in kind as well as in degree of risk posed,' to burglary, arson, extortion, or crimes involving explosives") (quoting *Begay*, 553 U.S. at 143).

[78] *Zuniga*, 553 F.3d at 1335.

[79] *Id.*

16

possession of a deadly weapon in prison indicated that the defendant was prepared to use violence if necessary.[80]

The Third Circuit considered *Zuniga* in its decision in *Polk*, but rejected the Tenth Circuit's reasoning.[81] The decision in *Polk* instead concluded that "[p]ost-*Begay*, the distinction between active and passive crimes is vital when evaluating offenses under the Career Offender Guidelines."[82] The court determined that "[w]hile possessing a weapon in prison is purposeful, in that we may assume one who possesses a shank intends that possession, it cannot properly be characterized as conduct that is itself aggressive or violent, as only the potential exists for aggressive or violent conduct," and possession is a passive crime.[83] We disagree with this analysis for the reasons considered above, not the least of which is that one of the enumerated crimes of violence in section 4B1.2 of the Guidelines is a felon in possession of certain firearms. We conclude that the better-reasoned approach is that taken by the Tenth Circuit.

Our court has previously considered the import of *Begay* in determining whether various crimes are crimes of violence. Recently, in *United States v. Hughes*,[84] we held that a conviction based on a prisoner's escape from federal custody or confinement[85] was a violent felony within the meaning of the ACCA. We reasoned that "even in a case where a defendant escapes from a jail by

---

[80] *Id.*

[81] *Polk*, 577 F.3d at 520 ("While we understand [the Tenth Circuit's] desire to continue treating possession of a weapon in prison as a 'crime of violence,' we cannot agree with its reasoning that the likelihood of potential for violent and aggressive behavior to come about as a result of the offense is sufficient for qualification in light of *Begay*").

[82] *Id.* at 519.

[83] *Id.*

[84] 602 F.3d 669 (5th Cir. 2010).

[85] 18 U.S.C. § 751(a).

stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody."[86] We further observed that "escape is typically committed in a purposeful manner, and when these escapes cause injuries, those injuries typically result from intentional action, not negligence or even recklessness."[87] A prisoner's possession of a deadly weapon in prison presents an analogous risk and similar intentional conduct. When deadly weapons are used by prisoners, the injuries typically result from intentional, purposeful actions, not negligence or recklessness.

In other cases decided since *Begay* issued, we have held that evading arrest or detention by use of a vehicle,[88] robbery by sudden snatching,[89] stalking,[90] and being a felon in possession of a short-barreled shotgun[91] are crimes of violence, and that terroristic threatening[92] is not.

The Ninth Circuit has recently held that a prior conviction for possession of a weapon in jail is a crime of violence within the meaning of U.S.S.G.

---

[86] *Hughes*, 602 F.3d at 675.

[87] *Id.* at 677.

[88] *United States v. Harrimon*, 568 F.3d 531, 534-35 (5th Cir.), *cert. denied*, 130 S. Ct. 1015 (2009).

[89] *United States v. Bryant*, 312 F. App'x 698, 703 (5th Cir. 2009) (unpublished) (per curiam).

[90] *United States v. Mohr*, 554 F.3d 604, 609-10 (5th Cir.)*, cert. denied*, 130 S. Ct. 56 (2009).

[91] *United States v. Moore*, 326 F. App'x 794, 794-95 (5th Cir.) (unpublished) (per curiam), *cert. denied*, 130 S. Ct. 337 (2009). The commentary to U.S.S.G. § 4B1.2 specifically states that unlawfully possessing the type of firearm that Moore possessed is a crime of violence. *Id.* at 795.

[92] *United States v. Johnson*, 286 F. App'x 155, 157-58 (5th Cir. 2008) (unpublished) (per curiam).

§ 4B1.2(1)(ii).[93]  In that case, the defendant had previously been convicted of violating California law[94] by possessing a shank while in jail.[95]  The Ninth Circuit relied on its pre-*Begay* decision in *United States v. Young*,[96] reasoning that this offense "created a viable risk that a person might be injured, which made it a crime of violence."[97]

The dissent rejects the holdings of the Ninth and Tenth Circuits, finding the Third Circuit's reasoning in *United States v. Polk*[98] more persuasive.  For the reasons considered above, we respectfully disagree with the Third Circuit and the dissent.  The dissent emphasizes that "'[t]he possibility that one will confront another person with violent results is not sufficient.'"[99]  While we do not categorically disagree with that statement, the possibility that one will confront another with violent results must be examined.  It is the nature and degree of the risk that guides us.  The Supreme Court recognized in *James* that "[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party."[100]  The risk that a prisoner armed with a deadly weapon will attack or resist a third person is at least as great as the risk presented by burglary of a dwelling and is of the same nature

---

[93] *United States v. Mitchell*, No. 08-50429, __ F.3d __, 2010 WL 4105220 (9th Cir. Oct. 20, 2010).

[94] CAL. PENAL CODE § 4574(a).

[95] *Mitchell*, __ F.3d at __, 2010 WL 4105220 *2.

[96] 990 F.2d 469 (9th Cir. 1993).

[97] *Mitchell*, __ F.3d at __, 2010 WL 4105220 *2.

[98] 577 F.3d 515 (3d Cir. 2009).

[99] *Post* at 23 (quoting *Polk*, 577 F.3d at 519) (emphasis omitted).

[100] *James v. United States*, 550 U.S. 192, 203 (2007).

as the risk presented by burglary. The dissent attempts to distinguish an inmate's possession of a deadly weapon from burglary by arguing that "the difference 'in kind' between the offense at issue here and the comparative crimes is that '[b]urglary requires both the intent to enter a building and the intent to commit a crime once inside'" and that "'[t]his second intent is what makes burglary purposeful, violent, and aggressive in all cases.'"[101] Such a distinction cannot be squared with the reasoning in *James*.

The dissent attempts to minimize the nature of Marquez's prior conviction by describing the club he possessed in prison, which was made of a rolled, dried, and hardened magazine or other type of paper.[102] However, Marquez has never contended that the club did not truly constitute a deadly weapon. Nor could he successfully do so in this court. He was convicted under New Mexico law of possessing a deadly weapon, and we cannot dismiss this judicial determination by attempting to diminish the dangerousness of the particular weapon he possessed. A factual determination was made in the prior state court proceedings that the club was capable of producing death or great bodily injury. We must accept that finding.

The district court did not err in concluding that Marquez's prior conviction for possession by an inmate of a deadly weapon in a penal institution was for an offense that constitutes a crime of violence.

\*       \*       \*

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[101] *Post* at 24 (quoting *United States v. Templeton*, 543 F.3d 378, 383-84 (7th Cir. 2008) (holding that some escapes from prison are crimes of violence while others are not)).

[102] *See, e.g., post* at 30 ("And a simple, makeshift club does not necessarily serve only aggressive and violent purposes. Marquez could have possessed the weapon for the purpose of deterring others from attacking him.").

No. 09-50372

DENNIS, Circuit Judge, dissenting.

The majority erroneously concludes that the New Mexico offense of possession by a prisoner of a deadly weapon—here, a cudgel made of a dried paper magazine—N.M. Stat. Ann. § 30-22-16, is a "crime of violence" under the residual clause of § 4B1.2 of the Sentencing Guidelines, although the state statute criminalizes such possession even if the inmate never uses nor intends to use the weapon to harm or threaten another. In *Begay v. United States*, 553 U.S. 137 (2008), the Supreme Court held that a "violent felony" under the nearly identical provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B),[1] must involve "purposeful, violent, and aggressive conduct." The majority in the instant case mistakenly classifies the New Mexico crime at issue as a "crime of violence" on the theory that the "purposeful possession" of a deadly weapon in prison creates a "potential for violence." This conclusion ignores the teaching of *Begay*, however, which requires a crime to be "violent and aggressive" as well as "purposeful" in order to fit the category of a violent felony or crime of violence. Because the crime at issue here is not "violent" or "aggressive," the majority's holding conflicts with the Guidelines' intent, as clearly indicated by *Begay*. Accordingly, I respectfully dissent.

---

[1] *Compare* 18 U.S.C. § 924(e)(2)(B) ("violent felony"), *with* U.S.S.G. § 4B1.2 ("crime of violence"). *Begay* controls our analysis of the definition of "crime of violence" under the residual clause of § 4B1.2 of the Sentencing Guidelines. *United States v. Hughes*, 602 F.3d 669, 673 n.1 (5th Cir. 2010) (We "'appl[y] our holdings under the residual clause of the ACCA to analyze the definition of crimes of violence under § 4B1.2, and vice versa.'" (quoting *United States v. Mohr*, 554 F.3d 604, 609 n. 4 (5th Cir. 2009)); *see also United States v. Thomas*, 484 F.3d 542 (8th Cir. 2007) (construing "crime of violence" under § 4B1.2), *vacated*, 553 U.S. 1001 (2008) (remanding "for further consideration in light of *Begay*").

21

**I**

**A**

*Begay* held that to satisfy the definition of "violent felony" under the residual clause of the ACCA, which has practically the same definition as "crime of violence" under the residual clause of § 4B1.2, an offense must meet two criteria: First, the offense must involve conduct that "presents a serious potential risk of physical injury to another," i.e., that it is "an extremely dangerous crime." *Id.* at 141-42 (internal quotation marks omitted). *Additionally* and separately, the offense must be "roughly similar, in kind *as well as* in degree of risk posed," to the comparative offenses of "burglary [of a dwelling], arson, extortion, or crimes involving the use of explosives." *Id.* at 142-43 (emphasis added). Defining this second prong, the Court distilled the following similar attributes from the comparative offenses: They all "typically involve purposeful, violent, and aggressive conduct." *Id.* at 144-45 (internal quotation marks omitted). In applying its interpretation to the offense of driving under the influence, the *Begay* Court assumed that DUI involved conduct that presents a serious potential risk of physical injury, but, nonetheless, held that it was *not* an included offense because "statutes that forbid driving under the influence[] . . . typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." *Id.* at 145.

It is clear, then, that an offense is not a crime of violence if it involves *only* a potential risk of physical injury, even if it is the result of purposeful conduct, as long as it is not violent and aggressive. *See United States v. Herrick*, 545 F.3d 53, 58-59 (1st Cir. 2008) ("all three types of conduct—i.e., purposeful, violent and aggressive—are necessary for a predicate crime to qualify as . . . a 'crime of

violence' under the Guidelines").[2]  In other words, the potential risk of injury created by conduct that reflects the future potential for violent and aggressive conduct does not satisfy *Begay*'s test and fails to meet the definition of a crime of violence.  *See United States v. Polk*, 577 F.3d 515, 519 (3d Cir. 2009) ("*Begay* points out that even a serious potential for injury is not enough to qualify a crime [as a crime of violence]; the risk created must also be 'similar in kind' to the crimes set out. . . . *The possibility that one will confront another person with violent results is not sufficient*." (citations omitted) (emphasis added)).  According to *Begay*, a crime of violence depends on conduct that is at once purposeful, violent, and aggressive, not just purposeful and potentially violent.

Here, assuming *arguendo* that the offense of possession of a deadly weapon by an inmate presents a serious potential risk of physical injury, the offense does not reflect the aggressive and violent conduct encompassed in any of the comparative crimes of "burglary of a dwelling, arson, or extortion," or crimes "involving] [the] use of explosives."  Those crimes are marked by "aggressive, violent acts aimed at other persons or property where persons might be located and thereby injured."  *United States v. Archer*, 531 F.3d 1347, 1351 (11th Cir. 2008).  "They involve overt, active conduct that results in harm to a person or property."  *Polk*, 577 F.3d at 519; *see also Herrick*, 545 F.3d at 58 ("[A]ggressive may be defined as 'tending toward or exhibiting aggression,' which in turn is defined as 'a forceful action or procedure (as an unprovoked attack) esp[ecially] when intended to dominate or master.'  Violence may be defined as 'marked by extreme force or sudden intense activity.'" (citation omitted)).  By contrast, the

---

[2] *See also Chambers v. United States*, 129 S. Ct. 687, 691-92 (2009) (discussing the conduct elements as conjunctive: "purposeful, violent, *and* aggressive conduct" (emphasis added) (internal quotation marks omitted)); *United States v. Williams*, 537 F.3d 969, 975 (8th Cir. 2008) ("The Supreme Court's description of conduct that is similar in kind consistently uses 'and' to join the words 'purposeful, violent, and aggressive conduct.'  Therefore, all characteristics should typically be present before a[] . . . crime reaches the level of an example crime." (citation omitted)).

New Mexico offense of possession of a deadly weapon by an inmate "is a passive crime centering around possession, rather than around any overt action." *See Archer*, 531 F.3d at 1351; *see also Chambers*, 129 S. Ct. at 689, 692 (failure to report for incarceration does not meet the definition of a crime of violence because it reflects "a form of inaction, a far cry from the 'purposeful, violent, and aggressive conduct' potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion"). "Post-*Begay*, the distinction between active and passive crimes is vital when evaluating offenses . . . to determine if they entail 'purposeful, violent, and aggressive conduct.'" *Polk*, 577 F.3d at 519.

An illustration of the difference "in kind" between the offense at issue here and the comparative crimes is that "[b]urglary requires both the intent to enter a building and the intent to commit a crime once inside. This second intent is what makes burglary purposeful, violent, and aggressive in all cases." *United States v. Templeton*, 543 F.3d 378, 383 (7th Cir. 2008).[3]   Like burglary, the comparative offenses involve "intentionally encroaching on another's property or person, or intentionally injuring another's property or person." *Id.*   By contrast, the New Mexico crime of possession of a deadly weapon by an inmate does not require an intent to use the weapon for any particular purpose. It proscribes "any inmate of a penal institution, reformatory, jail or prison farm or ranch possessing any deadly weapon or explosive substance." N.M. Stat. Ann. § 30-22-16.   While the New Mexico court of appeals has said in dicta that the

---

[3] As the Seventh Circuit reasoned in explaining why some escape offenses (e.g., failing to return from a furlough) are not crimes of violence:

> The crime does not require any violent or aggressive act. Although the statute does require intent, the required mental state is only intent to be free of custody, not intent to injure or threaten anyone. It is easy to [commit the offense] without intending or accomplishing the destruction of property or acting in an aggressive, violence-provoking manner that could jeopardize guards or bystanders.

*Templeton*, 543 F.3d at 383.

possession of a weapon by an inmate requires knowing possession, *State v. Gonzalez*, 107 P.3d 547, 552 (N.M. Ct. App. 2005), the New Mexico Supreme Court has said that "'[e]vil intent or intended use for an improper purpose is not an element of the crime.'" *State v. Baca*, 845 P.2d 762, 768 (N.M. 1992) (quoting *People v. Velasquez*, 204 Cal. Rptr. 640, 641 (1984)).  Therefore, even assuming that the possession must be knowing, because the crime does not require an intent to use the weapon in a further criminal act, it fails to reflect similar aggressive or violent conduct as the comparative offenses.

## B

While this court has never decided whether the simple possession of a weapon by an inmate satisfies *Begay*'s interpretation, our published decisions applying *Begay*'s prescribed analysis have consistently held that only offenses that involve conduct that is sufficiently violent and aggressive, as well as purposeful, meet the definition of a crime of violence.  Recently, in *United States v. Schmidt*, No. 09-31138, ___ F.3d ___, 2010 WL 3910646 (5th Cir. Oct. 7, 2010), we held that the federal offense of stealing firearms from a licensed firearms dealer[4] was a violent felony under the residual clause of the ACCA. We noted that the offense in fact satisfied the elements of burglary, an enumerated offense in § 4B1.2.  *Id.* at *5.  Therefore, the similarity of purposeful, violent, and aggressive conduct to that enumerated crime was patent.

Earlier, in *United States v. Hughes*, 602 F.3d 669 (5th Cir. 2010), we found that the federal offense of escape from an institution[5] also met *Begay*'s test. Specifically, we found that the aggressive and violent component was reflected by the initiating of hostilities that would ensue in the impending confrontation

---

[4] *See* 18 U.S.C. § 922(u).

[5] *See id.* § 751(a).

with law enforcement officials seeking to capture the escapee.[6] *Id.* at 677 (citing *United States v. Harrimon*, 568 F.3d 531 (5th Cir. 2009)). Likewise, in *Harrimon*, we held that the Texas offense of evading arrest or detention by use of a vehicle satisfied *Begay*. There, not only did we find that the offense was purposeful in that it required intentional conduct, but we also found that it was aggressive because it was "offensive and forceful and characterized by initiating hostilities or attacks," and violent because "the use of a vehicle, usually a car, to evade arrest or detention typically involves violent force which the arresting officer must in some way overcome." 568 F.3d at 534-35 (internal quotation marks omitted).

Finally, in *United States v. Mohr*, 554 F.3d 604 (5th Cir. 2009), we held that the South Carolina offense of stalking is a crime of violence because it proscribes "words or conduct that are 'intended to cause and does cause a targeted person' to reasonably fear death, assault, bodily injury, criminal sexual contact, kidnaping or property damage to him or his family." *Id.* at 609 (quoting S.C. Code Ann. § 16-3-1700). We reasoned that "[t]hese outcomes are roughly analogous to the enumerated offenses set out in § 4B1.2." *Id.* at 609-10. The fact that the defendant's conduct directly impacted the victim resonates with the offensive and forceful conduct in *Harrimon* and therefore, reflects conduct that is easily described as aggressive and violent.

In light of these prior decisions of our court, the mere possession crime here does not meet the definition of a crime of violence. Unlike in *Schmidt*, where the offense was, practically speaking, identical to the enumerated offense of burglary, the crime here is closest to unlawful possession of a firearm by a felon, a crime that is expressly *excluded* from the definition of crime of violence.

---

[6] We also noted that escape is typically purposeful and when "escapes cause injuries, those injuries typically result from intentional action," and that escape reflected more violent conduct in comparison to the failure-to-report crime in *Chambers*. 602 F.3d at 677.

*See* U.S.S.G. § 4B1.2 cmt. n.1.  Furthermore, the crime here is unlike the crimes in *Hughes* and *Harrimon* because it was not offensive and did not involve violent, forceful hostilities initiated by Marquez.  Finally, very much unlike the stalking crime in *Mohr*, the passive possession crime here did not directly impact a victim, nor did it directly cause anyone to reasonably fear death, assault, bodily injury, criminal sexual contact, kidnaping or property damage.

## II

The thrust of the majority's position is that the possession of a deadly weapon by an inmate is a crime of violence because it poses a serious potential risk of physical injury and it reflects a potential for violence as with other comparative crimes, such as burglary.  This reasoning is in effect the same analysis articulated by Justice Scalia concurring in the judgment in *Begay*.  To define a crime of violence, Justice Scalia rejected the majority's "similar, in kind as well as in degree of risk posed" test and proposed a "comparative degree of risk" approach, which would include any offense that objectively presents a similar degree or likelihood of risk of physical injury as the enumerated crimes.  *See* 553 U.S. at 143-44.  However, the *Begay* majority expressly *rejected* that approach, and held that for an offense to constitute a crime of violence, it is not enough that it presents a similar degree of risk as the enumerated crimes—it must also be similar in kind, as reflected by "purposeful, violent, and aggressive" conduct.  *See id.*; *Templeton*, 543 F.3d at 383 ("It will not do to argue . . . that escape is enough like burglary to make it a crime of violence.  Doubtless for both crimes there is a chance the criminal will confront another person with violent results . . . .  But *Begay* requires the crime to be [purposeful, violent, and aggressive]."  At most, escape and burglary have "a common result: in both cases

27

injuries may follow confrontations. *Begay* requires similarities other than risk of injury."); *Polk*, 577 F.3d at 519.[7]

The majority's reliance on *United States v. Zuniga*, 553 F.3d 1330 (10th Cir. 2009), which held that the Texas offense of possession of a deadly weapon in prison is a violent felony under the ACCA, is likewise unavailing because the Tenth Circuit's reasoning relies on the same fallacy that was rejected by the *Begay* Court. In analyzing the second prong of *Begay*, the *Zuniga* court determined that "an offense is violent if it creates a likelihood of violence . . . . Similarly, possession of a deadly weapon in a penal institution creates the possibility—even the likelihood—of a future violent confrontation." *Id.* at 1335.[8] The court also found the crime was aggressive because, "[w]e consider it unlikely that any conduct properly characterized as 'violent' could not also be characterized as 'aggressive.' . . . When a prisoner carries a deadly weapon, that behavior indicates a readiness to enter into conflict . . . ." *Id.* at 1335-36.

This reasoning is flawed because it views the *likelihood* of violence and *potential* for aggression as dispositive; that by intentionally possessing a weapon in prison, an inmate is engaged in conduct that presents a high likelihood of violence and is therefore violent and, consequently, aggressive. This conclusion, draws any intentional offense with a "serious potential risk of physical injury" into the definition of a crime of violence and, in essence, adopts Justice Scalia's

---

[7] *See also United States v. Vincent*, 575 F.3d 820, 830-31 (8th Cir. 2009) (Gruender, J., dissenting) (rejecting the majority's contention that the "possession of a sawed-off shotgun is illegal precisely because it enables violence or the threat of violence," which is what makes it "like the listed crimes" in the residual clause of the ACCA, because it fails to address "whether the crime typically *involves* violent and aggressive conduct. This subtle difference in terminology has significant consequences; after all, many crimes that do not themselves *involve* violent and aggressive conduct may nevertheless *enable* violence or the threat of violence." (internal quotation marks and brackets omitted)).

[8] The Tenth Circuit easily concluded that the offense met *Begay*'s first prong of presenting a serious potential risk of physical injury. 553 F.3d at 1334.

minority view. But *Begay*'s second requirement entails more than the mere likelihood that another will be physically injured as a result of the offense—it requires conduct that is similar to the comparative offenses, that is, purposeful, violent, and aggressive conduct. Therefore, *Zuniga* misapplies *Begay* and fails to persuade me that possession of a weapon by an inmate is a crime of violence.[9]

The majority further attempts to shoehorn "the possibility that one will confront another with violent results" into the analysis of the second prong of *Begay*. *See* Majority Op. at 19-20. The majority's only support is a statement from *James v. United States* that "[t]he main risk of burglary arises not from the simple physical act of wrongfully entering into another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party." 550 U.S 192, 203 (2007), *quoted in* Majority Op. at 19. However, *James* was decided before *Begay* and therefore does not alter *Begay*'s prescribed analysis. As discussed above, *Begay* expressly extricates the analysis of the potential risk of physical injury—*Begay*'s first prong—from the analysis of similarity, in kind as well as in degree of risk posed—*Begay*'s second prong. Furthermore, the Court's analysis in *Chambers* demonstrates that the Court continues to separate these inquiries. In *Chambers*, the Court first analyzed the offense under *Begay*'s second prong and held that the crime was not purposeful, violent, and aggressive. *See* 129 S. Ct. at 692. Then, the Court turned back to *Begay*'s first prong, which it recapitulated as: "whether . . . an offender is significantly more likely than others to attack, or physically to resist, an

---

[9] The Ninth Circuit recently reaffirmed its pre-*Begay* decision in *United States v. Young*, 990 F.2d 469 (9th Cir. 1993), that possession of a weapon in prison in violation of California Penal Code § 4574(a) is a crime of violence under § 4B1.2. *See United States v. Mitchell*, ___ F.3d ___, 2010 WL 4105220, at *2 (9th Cir. Oct. 20, 2010). However, the *Mitchell* court did not cite *Begay* or *Chambers* and, in reaching this conclusion, instead reasoned only that "possession of a shank in jail . . . created a viable risk that a person might be injured, which made it a crime of violence." *Id.* That rationale directly conflicts with *Begay* and is therefore, not persuasive.

apprehender, thereby producing a 'serious potential risk of physical injury.'" *Id.* There, the Court considered *and rejected* the government's argument that the potential for future violent conduct made the offense a crime of violence, and relying on a statistical analysis, held that the crime did not meet the first *Begay* prong. *Id.* at 692-93. Thus, the majority mistakenly imports the possibility of injury into its analysis of *Begay*'s second prong.

Additionally, the majority analogizes the possession of a weapon by an inmate to the unlawful possession of one of the extremely dangerous weapons identified in the Sentencing Guidelines as a crime of violence. *See* U.S.S.G. § 4B1.2 cmt. n.1 ("'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a)," which includes sawed-off shotguns, machine guns, silencers, and some types of bombs, grenades, rockets, and missiles). When the Sentencing Commission added this commentary it said that "Congress has determined that those firearms described in 26 U.S.C. § 5845(a) are inherently dangerous and when possessed unlawfully, serve only violent purposes." U.S.S.G. supp. app. C at 134, amend. 674 (Reason for Amendment to Application Note 1 to § 4B1.2) (effective Nov. 1, 2004). However, unlike a bomb or machine gun, the "club" found in Marquez's cell—a tightly-rolled, wetted down magazine that had been allowed to dry—does not reflect an unusual measure of dangerousness. It certainly does not surpass that of, say, a handgun, which, if possessed unlawfully by a felon, would *not* constitute a crime of violence. And a simple, makeshift club does not necessarily serve only aggressive and violent purposes. Marquez could have possessed the weapon for the purpose of deterring others from attacking him. Nor is the fact that the possession occurred in a prison enough, on its own, to make this offense a crime of violence. *See Polk*, 577 F.3d at 519-20 ("*Begay* excludes th[e] mode of analysis" that would define possession of a weapon by an inmate as a crime of violence

No. 09-50372

simply because "no permissible use exists for a prisoner to possess a weapon. . . . We do not dispute the inherent dangers of possessing a [weapon] in prison, but this alone cannot transform the mere possession offense into one that is similar to the crimes listed.").

The majority is correct that we cannot "minimize[] the nature of Marquez's prior conviction by describing the club he possessed in prison, which was made of a rolled, dried, and hardened magazine or other type of paper" in order "to diminish the dangerousness of the particular weapon he possessed." Majority Op. at 20. But we cannot close our eyes to the nature of the weapon Marquez possessed either. Our inquiry here requires us to decide if Marquez's offense was "similar, in kind as well as in degree of risk posed" to the § 4B1.2 comparative crimes. Marquez did not object to the presentence report's description of the hardened paper club he possessed and he acknowledged that it was a "deadly weapon" under New Mexico law.[10] However, the definition of the New Mexico offense of possession of a deadly weapon by an inmate also clearly makes it a purely passive, possessory crime, requiring no element of intent to use the weapon, nor any violence or aggression; and obviously demonstrates that it is dissimilar from possession of one of the inherently and extremely dangerous weapons, such as a bomb or sawed-off shotgun, identified

---

[10] Additionally, because New Mexico defines "deadly weapon" to include weapons that are and are not identified in § 5845(a), *see* N.M. Stat. Ann. § 30-1-12(B) ("deadly weapon" includes, among other things, "any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of . . . bludgeons"), the New Mexico offense of possession of a "deadly weapon" by an inmate includes offenses that are crimes of violence as well as offenses that are not. *See* U.S.S.G. § 4B1.2 cmt. n.1. Where, as here, the statute of conviction encompasses multiple offenses and not all of those offenses constitute crimes of violence, the Supreme Court has held that we must first determine the relevant "classification of the crime." *See Chambers*, 129 S. Ct. at 690-91. In doing so, it is appropriate to consider, for instance, charging documents, plea agreements, and "comparable judicial record[s]," and "any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 25 (2005)). Therefore, it is perfectly in line with the Supreme Court's decisions that we consider the nature of the weapon that Marquez possessed.

31

in § 5845(a), where the majority erroneously tries to shoehorn it. The mere possession of a weapon other than those identified in § 5845(a), which would not otherwise be a crime of violence, is not transformed into a crime of violence under § 4B1.2 by virtue of where the weapon is possessed. *Begay* and *Chambers* require more than similarity in degree of risk posed, based on the circumstances; they require as well similarity *in kind* to the comparative offenses, such as burglary of a dwelling. The Sentencing Commission created a very narrow category of crimes of violence for weapons possession offenses that includes *only* weapons that "Congress has determined . . . are inherently dangerous and when possessed unlawfully, serve only violent purposes." *See* U.S.S.G. supp. app. C at 134, amend. 674. Therefore, key to the Commission's classification of the unlawful possession of a bomb or sawed-off shotgun by a felon as a crime of violence is the inherent *dangerousness* of the weapon—as found by Congress—not *where* the weapon is possessed. *Id.* The majority erroneously compares Marquez's offense to the possession of a bomb or sawed-off shotgun; however, the inherent danger present in those weapons is not present in a club fashioned from hard, dried, paper.

### III

The New Mexico offense of possession of a deadly weapon by an inmate does not require violent and aggressive conduct and therefore fails under *Begay*'s analysis to satisfy the definition of a crime of violence. The offense does not require intent to use the weapon for any particular purpose; rather, it punishes mere possession. This passive crime does not involve any overt act aimed at a person or property. I agree with the reasoning of the Third Circuit in *Polk* and the Eleventh Circuit in *Archer*, that under *Begay*, mere possession of a dangerous instrument, without more, does not necessarily involve violent or aggressive conduct. Therefore, while I agree that the offense involves a serious

potential risk of physical injury, in light of *Begay*, I cannot agree with the majority that the offense is a "crime of violence" under the residual clause of § 4B1.2.